## In re TOTAL TRANSPORTATION, INC., Debtor.

**Thomas F. MILLER, Trustee, Plaintiff,**

v.

**BTS TRANSPORT SERVICES, Defendant.**

**CV. 4–88–408**
**Bankruptcy No. 4–85–1909.**
**Adv. No. 4–87–269.**

United States District Court,
D. Minnesota.

May 20, 1988.

---

**1.** Appellee quite rightly points out that the code, due to a typographical error, has the word "or"    at this point.

Paul O. Taylor, Minneapolis, Minn., for plaintiff.

Thomas J. Lallier, Minneapolis, Minn., for defendant.

## ORDER

MACLAUGHLIN, District Judge.

Based on the Report and Recommendation to the District Court of Bankruptcy Judge Nancy C. Dreher dated April 28, 1988, no objections having been filed pursuant to Bankruptcy Rule 5011(b),

IT IS HEREBY ORDERED that:

Defendant's motion for an order that this court abstain from exercising jurisdiction pursuant to 28 U.S.C. § 1334(c) is denied.

## MEMORANDUM ORDER AND REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR ABSTENTION, REFERRAL AND A DETERMINATION OF STATUS

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on the 16th day of March, 1988, on defendant's motion, in the alternative, for an order abstaining or referring this matter to the Interstate Commerce Commission, and for an order determining whether this is a core proceeding. Paul O. Taylor appeared on behalf of plaintiff; Thomas J. Lallier appeared on behalf of defendant. This court has jurisdiction, pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rules 103(c) and 106(h) to initially evaluate the grounds for abstention in accordance with Bankruptcy Rule 5011(b) and to finally decide the defendant's other two requests for relief. Based on the arguments of counsel, the memoranda submitted, and all the files, records and proceedings herein, the court makes the following Memorandum Order and, in the case of abstention, Report and Recommendation pursuant to Bankruptcy Rule 5011(b). I have determined that the request for referral to the Interstate Commerce Commission should be denied and I have further determined that this is a core proceeding. I am issuing this Memorandum Order to that effect. I have also determined that abstention is not appropriate and am respectfully recommending that the district court, after appropriate review of this report and any objection filed by either party under Bankruptcy Rule 9033, deny the motion to abstain.

## FACTS

Plaintiff, Total Transportation, Inc. ("TTI") was a motor common carrier pursuant to a Certificate of Public Convenience

and Necessity issued by the Interstate Commerce Commission ("ICC"). It was engaged in the trucking business on a nationwide basis. As required by the ICC, TTI filed published rates to be charged its customers. In late 1985, TTI ceased operations after an involuntary petition in bankruptcy was filed against it. In August of 1987, an audit of TTI's freight bills was conducted to determine whether additional charges were owed TTI based on proper application of TTI's tariffs.

This adversary proceeding is one of over 50 similar proceedings ("the adversary proceedings") commenced by the trustee for TTI against former customers which were brought as a result of that audit. In all cases, the trustee for TTI claims that the customers owe undercharges for pre-petition transportation services performed by TTI. Based on the "filed rate doctrine", TTI claims that the published rates must be substituted for the rates TTI actually quoted, billed and accepted in full payment for such services, and that the customers owe the account balance due for the differential. It relies on 49 U.S.C. § 10761(a) which, in essence, provides that deviation from lawful rates in charges and tariffs which motor common carriers such as TTI have filed with the ICC is absolutely prohibited. The customers, including defendant BTS Transport Services, assert that TTI is confined to collection of the invoiced rates.

The amounts involved in the proceedings vary widely, but are in several instances, very substantial. The customers range in geographic location. This proceeding is one of several still pending where the amount involved is less than $10,000.00.

## DISCUSSION

### A. Abstention

Defendant asserts the court should abstain from deciding this case because the amount involved (approximately $2,700.00) is less than $10,000.00. Defendant relies on Local Rule 106(h) which provides, in pertinent part:

> Unless the court orders otherwise, the court shall abstain from and dismiss a complaint for collection of a debt under § 542(b) of the Code if the amount in controversy is less than $10,000.00.

Plaintiff asserts that Rule 106(h) specifically allows the court discretion to hear and decide proceedings even where the amount is less than $10,000.00, and further asserts that in this case the court should exercise its discretion not to abstain.

I previously addressed this same issue in two TTI adversary proceedings. *See Miller v. M.L. Sales, Inc. (In re Total Transportation, Inc.)*, Bky. No. 4–85–1909, Adv. No. 4–87–230 (Bktcy.D.Minn. Feb. 29, 1988) [available on WESTLAW, 1988 WL 68043]; *Miller v. Oh Boy! Corp. (In re Total Transportation, Inc.)*, Bky. No. 4–85–1909, Adv. No. 4–87–252 (Bktcy.D.Minn. Feb. 29, 1988) [available on WESTLAW, 1988 WL 68045]. For the reasons set forth in my Report and Recommendation made to the district court in each of those proceedings,[1] I recommend that the motion to abstain should be denied.

My decision to recommend against abstention is governed by 28 U.S.C. § 1334(c)(1)[2] which allows for discretionary abstention "in the interest of justice, or in the interest of comity with state courts or respect for state law." The factors I have considered in recommending against abstention are as follows.

*First*, while the claims asserted by the trustee raise questions of state common law, those questions are neither unsettled nor complex. Thus, there are no special reasons here for being concerned about comity with state courts or respect for state law. *See Minstar, Inc. v. Plastech*

---

**1.** No party filed written objections to the Reports and Recommendations within the time provided by Rule 9033.

**2.** Defendant has not suggested that this is a mandatory abstention case. Under 28 U.S.C. § 1334(c)(2) abstention is mandated "if an ac-

tion is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction." There is no indication that any proceeding has been filed in state court and, therefore, mandatory abstention is not required.

*Research, Inc.* (*In re Arctic Enterprises, Inc.*), 68 B.R. 71, 78 (D.Minn.1986). *See also Allegheny, Inc. v. Laniado Wholesale Co.* (*In re Allegheny, Inc.*), 68 B.R. 183, 192 (Bktcy.W.D.Pa.1986) (action on account receivable which involves no unique issues of state law inappropriate for abstention under 28 U.S.C. § 1334(c)(1)).

*Second,* it is clear that the procedural posture of these proceedings renders them susceptible to expeditious resolution in this court, while relegating them to one or more state courts will almost certainly delay the administration of the estate and complicate this bankruptcy case. I recently spent one day conducting scheduling conferences on nearly all of the pending TTI adversary proceedings, as a result of which a large number of the proceedings settled, were dismissed, or were resolved by default judgments in TTI's favor. The remaining proceedings have been set for trial during the summer or early fall of 1988. In recommending against abstention, I am guided by what will most reasonably provide for efficient and expeditious administration of the estate. *See Allegheny,* 68 B.R. at 192. *See also World Solar Corp. v. Steinbaum* (*In re World Solar Corp.*), 81 B.R. 603, 612–13 (Bktcy.S.D.Cal.1988) (abstention inappropriate where debtor attempting to collect from a number of account debtors and state court actions will take substantially longer than adjudication in bankruptcy court). In this case, that means trying all the cases in this court.

*Third,* the trustee's argument that it will face statute of limitations bars if it must recommence its actions in other forums is compelling. Abstention is not appropriate where such action would leave the litigant with no other forum for proceeding. *See Arctic Enterprises,* 68 B.R. at 78.

As plaintiff points out, Local Rule 106(h) does not require abstention in all cases where less than $10,000.00 is involved. Rather it leaves the issue to the court in the exercise of its discretion. In this case, there are a series of collections on accounts receivable, all raising essentially the same defenses, and all now, in my opinion, governed with respect to these defenses by a decision in this district court. It will be much more efficient to deal with these collections here, rather than in a series of scattered state court actions. For the reasons stated above, I am respectfully recommending that the district court decline to abstain from this proceeding.

## B. Referral to the Interstate Commerce Commission

■ Defendant next asserts that this matter should be referred to the ICC based on the doctrine of primary jurisdiction. In a related TTI proceeding, *Miller v. Armour & Co.* (*In re Total Transportation, Inc.*), 84 B.R. 590 (Bktcy.D.Minn.1987), Judge Kressel denied Armour's motion for reference to the ICC. At the time of hearing on defendant's motion in this case, *Armour* was on appeal to the district court. Judge MacLaughlin has now issued an opinion, *Miller v. Armour & Co.* (*In re Total Transportation, Inc.*), 84 B.R. 590 (D.Minn.1988) in which he affirmed Judge Kressel's decision. *See also Cooper v. California Consol. Enters., Inc.* (*In re Carolina Motor Express, Inc.*), 84 B.R. 979 (Bktcy.W.D.N.C.1988) (if no dispute as to what the correct rates are, the bankruptcy court is fully capable of reviewing the application of the involved rates and deciding the amount owed by each defendant). Judge MacLaughlin's decision also held that there can be no deviation from filed rates; thus, the several equitable defenses raised by Armour (and raised by numerous other defendants in the other TTI adversary proceedings) are not available to the defendants.

I agree with the reasoning of Judge Kressel, affirmed by Judge MacLaughlin, that referral was inappropriate in *Armour.* This case parallels *Armour* in all respects, and likewise should not be referred to the ICC.

## C. Determination of Status

Finally, defendant seeks a determination that this action is a non-core proceeding under 28 U.S.C. § 157(b)(2). Defendant's motion places the court in the midst of a maelstrom that has developed in bankrupt-

cy courts over the question of whether an action by a debtor to collect a pre-petition account receivable is a core proceeding, properly resolved by the bankruptcy court, or a non-core proceeding, in which the bankruptcy court is confined to issuing recommendations to the district court for final resolution. There is no easy answer; nearly every court that has faced the issue has struggled in an attempt to find one.[3] The differing lines of opinion are caused by differing interpretations of the meaning and intent of the United States Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and differing views of the appropriate reading to be given 28 U.S.C. § 157(b)(2), Congress's response to *Marathon's* holding.

As originally drafted, the Bankruptcy Reform Act of 1978 ("1978 Act"), S.Rep. No. 95–989, 95th Cong., 2d Sess. 1, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, placed original and exclusive jurisdiction in the district courts to hear and decide all cases under title 11 and original, but not exclusive, jurisdiction to hear and decide all civil proceedings arising under, arising in, or related to cases under title 11. 28 U.S.C. § 1471(a) & (b) (repealed 1984). Concurrently therewith, the 1978 Act conferred this overall grant of jurisdiction in the bankruptcy courts. *See* 28 U.S.C. § 1471(c) (repealed 1984). In *Marathon,* the Supreme Court determined that the decision to vest all such jurisdiction in the bankruptcy courts was unconstitutional. 458 U.S. at 88. *Marathon* did not invalidate the overall jurisdictional provisions of subdivisions (a) and (b) of section 1471; it dealt solely with subdivision (c), grant of such jurisdiction to the bankruptcy courts. *See* 458 U.S. at 85–87, 102 S.Ct. at 2878–80.

In response, Congress repealed the jurisdictional provisions of 28 U.S.C. §§ 1471 to 1482 and enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA), Pub.L. No. 98–353, 98 Stat. 333 (1984). The Congressional solution, while seemingly quite simple, was not. In 28 U.S.C. § 1334(a) and (b), Congress again reiterated its grant to district courts of broad jurisdiction in all cases under title 11 and all matters arising under, arising in, or related to a bankruptcy case. In essence, Congress simply reenacted former 28 U.S.C. § 1471, subdivisions (a) and (b). In place of former subdivision (c) of section 1471, however, Congress added 28 U.S.C. § 157. Therein, after first granting district courts the power to refer all cases under title 11 and all proceedings arising in, arising under, or related to cases under title 11 to bankruptcy judges (which the Minnesota District Court has done by Local Rule), it provided that bankruptcy judges may hear and finally determine all cases under title 11 and "all core proceedings arising under title 11, or arising in a case under title 11" and may render final judgments therein, subject only to review under section 158 of title 28. 28 U.S.C. § 157(b)(1).

Congress did not define core proceedings; rather it supplied illustrative examples. 28 U.S.C. § 157(b)(2) provides:

> Core proceedings include, but are not limited to—
>
> (A) matters concerning the administration of the estate;
>
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under Chapter 11, 12 or 13 of title 11, but not the

---

3. For examples of cases which hold that a suit to collect a pre-petition account receivable is a core proceeding, see *Combined Cos. Inc. v. Nice Enterprises, Inc. (In re Combined Cos.)*, Bky. No. 4–85–922, Adv. No. 4–85–251, slip op. at 9 (Bktcy.D.Minn. Feb. 4, 1986); *National Equip. & Mold Corp. v. Apollo Tire Co. Inc. (In re National Equip. & Mold Corp.)*, 60 B.R. 133, 136 (Bktcy.N. D.Ohio 1986); *Franklin Computer Corp. v. Strauss (In re Franklin Computer Corp.)*, 50 B.R. 620, 625–26 (Bktcy.E.D.Pa.1985); *Baldwin Unit-* ed Corp. v. Thompson (In re Baldwin United Corp.)*, 48 B.R. 49, 54 (Bktcy.S.D.Ohio 1985). For a sampling of cases which came to precisely the opposite conclusion, see *Commercial Heat Treating v. Alcor Indus. (In re Commercial Heat Treating )*, 80 B.R. 880, 887–90 (Bktcy.S.D.Ohio 1987); *Stewart v. Strasburger (In re Astrocade, Inc.)*, 79 B.R. 983, 985 (Bktcy.E.D.Pa.1987); *Gstalder v. Seward (In re P & P Oil Field Equip., Inc.)*, 71 B.R. 621, 622 (Bktcy.D.Colo.1987).

liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury, tort or wrongful death claims.

As the Eighth Circuit Court of Appeals recently stated, "the distinction between core and noncore proceedings is at the heart of Congress's response to the Supreme Court's ruling in *Marathon*." *Craig v. McCarty Ranch Trust (In re Cassidy Land & Cattle Co., Inc.)*, 836 F.2d 1130, 1132 (8th Cir.1988).

Specifically enumerated within section 157(b)(2) are "orders to turnover property of the estate." 28 U.S.C. § 157(b)(2)(E). 11 U.S.C. § 542 is entitled "Turnover of property to the estate" and it is that section of the Code which specifically addresses the power of the trustee to commence and maintain turnover actions. Section 542 requires, in subdivision (a), that all property of the estate be delivered to the trustee and accounted for, with certain exceptions. Subdivision (b) goes on to even more specifically state:

> Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee....

11 U.S.C. § 542(b).

I need not decide whether an action to collect a matured pre-petition account receivable is a "matter concerning the administration of the estate", 28 U.S.C. § 157(b)(2)(A), or is one of the "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship...." 28 U.S.C. § 157(b)(2)(O). As the Eighth Circuit in *Cassidy* noted, I am

> cautioned against a broad interpretation of these catch-all provisions for fear of emasculating the mandate of *Marathon*. *In re Wood*, 825 F.2d 90, 95 (5th Cir. 1987). Under a broad reading of § 157(b)(2)(A) and (O), even the state law contract claim at issue in *Marathon* would constitute a core proceeding.

836 F.2d at 1132.

Rather, I conclude that an action such as this on a matured account receivable is the type of turnover proceeding Congress included in 28 U.S.C. § 157(b)(2)(E). I agree with Judge Kressel's view, expressed in *Combined Cos., Inc. v. Nice Enters., Inc. (In re Combined Cos., Inc.)*, Bky. No. 4–85–922, Adv. No. 4–85–251, slip op. at 9 (Bktcy.D.Minn. Feb. 4, 1986), that it is hardly an accident that Congress used turnover in the title of section 542 as well as in 28 U.S.C. § 157(b)(2)(E). The remedy of turnover is one of the trustee's many traditional weapons to garner assets of the estate and Congress has specifically stated that an action on a matured debt payable on demand is one right the trustee may pursue. Collecting receivables, especially in a case such as TTI's where those receiv-

ables make up the major assets of the estate in liquidation, is as close as one can get, in my view, to a traditional type of proceeding at the heart or core of bankruptcy.

In reaching this conclusion, I find guidance in the Eighth Circuit's recent decision in *Craig v. McCarty Ranch Trust (In re Cassidy Land & Cattle Co., Inc.)*, 836 F.2d 1130 (8th Cir.1988). *Cassidy* involved an adversary proceeding commenced by the trustee for the debtor seeking to foreclose upon certain mortgages held by the bankrupt estate and executed in favor of the bankrupt by McCarty Ranch. The issue in *Cassidy* was whether such an action was a core proceeding which could be heard and finally determined in the bankruptcy court. 836 F.2d at 1131. The $2 million note secured by a mortgage constituted the sole asset of the bankrupt estate and the note contained an acceleration clause which provided that the entire debt was due and payable in the event of the default which had occurred. While the Eighth Circuit declined to make a "comprehensive interpretation" of the jurisdictional provisions of BAFJA, it did hold that the action on the note and foreclosure of the property securing that note was a core proceeding because it was in the nature of a turnover action under 28 U.S.C. § 157(b)(2)(E). *Cassidy*, 836 F.2d at 1133. "Given that a turnover proceeding is expressly enumerated as a core proceeding under section 157(b)(2)(E), we hold that the. bankruptcy court had proper jurisdiction to conduct the foreclosure proceeding." *Cassidy*, 836 F.2d at 1133. While the court was careful to limit the decision in *Cassidy* to actions brought by the debtor itself and not the typical foreclosure associated with a bankruptcy proceeding where the debtor is the party against whom foreclosure proceedings are brought, it did provide ample support for my conclusion that a parallel type action, one to collect a matured account receivable, is in the nature of a turnover proceeding and a core proceeding.

The propriety of considering an action to recover filed rate charges as being in the nature of a turnover action was considered in *Calhoun v. Copeland Corp. (In re Gor-dons Transps. Inc.)*, 51 B.R. 633 (Bktcy.W. D.Tenn.1985). In that case the defendant-shipper urged that the debt was not "matured" or "payable on demand" because there existed a bona fide dispute as to whether the debt was owing. The court disagreed, as do I, and stated:

> It is this Court's reading of Section 542(b) that the terms 'matured', 'payable on demand', and 'payable to order' refer to debts that are presently payable, as opposed to those that are contingent and become payable only upon the occurrence of a certain act or event.

> The debt owed by Copeland to Gordon's was 'matured' because the duties under the contract were fully performed and Copeland makes no claim of incomplete or improper delivering of the commodities.

*Gordon's Transps.*, 51 B.R. at 636.

In support of its motion, defendant cites *Christison v. Caterpillar, Inc. (In re Tobler Transfer, Inc.)*, 74 B.R. 373 (Bktcy.C. D.Ill.1987). *Tobler* involved an action by the trustee of a bankrupt carrier to recover unbilled freight charges based on the filed rate doctrine. In *Tobler* the court held that an action to recover freight overcharges was not a core proceeding. 74 B.R. at 375. It based its determination, at least in part, on its view that such an action was not of the " 'garden variety' accounts receivable [action] where the issues are simple and the amount due is not in dispute." *Id.* *Tobler* relied in large part on the decision in *In re Maislin Indus., U.S., Inc.*, 50 B.R. 943 (Bktcy.E.D.Mich.1985), which had also determined that a carrier's action to collect freight undercharges was not a core proceeding. *Id.* at 949–50.

■ *Tobler* and *Maislin* fall into that category of cases which view an action to collect a matured account receivable as a noncore proceeding, a position with which I disagree. I see no distinction between collecting freight undercharges and collecting a standard account receivable. An account receivable action seeks payment in full for services performed or goods delivered. In this case the services were performed well

in advance of the date of the filing of the petition and there is no dispute that the defendant received the benefits of the services. The only dispute relates to whether the amount billed or the filed rate should apply. In light of Judge MacLaughlin's decision in *Armour* the answer is simple; until Congress acts to change the law, "[b]oth the Interstate Commerce and the Elkins Act require the carrier to charge and collect the filed rate. It simply cannot be an unreasonable practice for a carrier to do so, regardless of any private agreement to the contrary." *Armour*, slip op. at 19–20.

Based on the foregoing, IT IS HEREBY ORDERED that:

Defendant's motion for referral to the Interstate Commerce Commission is denied. Pursuant to 28 U.S.C. § 157(b)(3) this court determines that this is a core proceeding under 28 U.S.C. § 157(b)(2). Further, with respect to the defendant's motion for abstention, I respectfully recommend the district court decline to abstain from this adversary proceeding for the reasons stated above.