**In re TRANSPORTATION SYSTEMS INTERNATIONAL, INC., Debtor.**

**Thomas G. LOVETT, Trustee for the Bankruptcy Estate of Transportation Systems International, Inc., Plaintiff–Appellee,**

v.

**HONEYWELL, INC., Defendant–Appellant.**

Bankruptcy No. 4–87–1952.
Civ. No. 4–89–803.
Adv. No. 4–89–289.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 23, 1990.

---

Paul O. Taylor, Paul O. Taylor & Associates, Bloomington, Minn., for plaintiff-appellee.

Byron D. Olsen, Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, Minn., for defendant-appellant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on appeal from the July 27, 1989 Order of the bankruptcy court. That order held that the automatic stay provisions of the Bankruptcy Code were violated by Honeywell Inc.'s initiation of a proceeding before the Interstate Commerce Commission (ICC) for a declaratory order barring "undercharge" claims asserted by debtor, Transportation Systems International, Inc. (TSI). The bankruptcy court also found that Honeywell's violation of the stay was willful and awarded TSI $1,500 in attorneys' fees and $5,000 in punitive damages.

The bankruptcy court's order will be reversed. The Court finds that Honeywell's effort to have the undercharge dispute heard by the ICC did not violate the automatic stay provisions of the Bankruptcy Code.

## FACTS

Honeywell, a manufacturer, hired TSI, a freight forwarder, to ship freight from 1984 through early 1987.

In June 1987, an involuntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code was filed against TSI. The bankruptcy court assigned an auditing company to examine TSI's freight bills to determine if TSI's customers had paid the lawful rates published in tariffs filed with the ICC.

Motor carriers are required to file tariffs setting forth charges for all transportation

services offered. 49 U.S.C. § 10761(a). Motor carriers can collect only the rates published in such filed tariffs. *Id.* By requiring motor carriers to adhere to the tariff rate, Congress intended to prevent motor carriers from discriminating in favor of particular shippers. *See Western Transport Co. v. Wilson & Co., Inc.,* 682 F.2d 1227, 1230–31 (7th Cir.1982). In 1980, the deregulation resulting from the enactment of the Motor Carrier Act made the trucking industry much more competitive. One problem was that motor carriers often failed to file tariffs covering the rates they negotiated. This meant that at time of shipment, the carriers would charge the negotiated rate but later the carrier or, more often, its trustee in bankruptcy would bill the shipper for "undercharges," the difference between the negotiated rate and the higher tariff rate. In response, shippers have argued that the collection of undercharges may, in a particular case, constitute a violation of the statutory requirement that a motor carrier's practices be reasonable. 49 U.S.C. § 10701. *See Buckeye Cellulose Corp. v. Louisville & Nashville R.R. Co.,* 1 I.C.C.2d 767 (1985), *aff'd sub nom. Seaboard System R.R. Co., Inc. v. United States,* 794 F.2d 635 (11th Cir.1986); *National Industrial Transportation League—Petition to Institute Rulemaking on Motor Common Carrier Rates,* 3 I.C.C.2d 99 (1987) (*Negotiated Rates I*). Because undercharge claims are brought in federal district courts or in adversarial proceedings before the bankruptcy courts and not before the ICC, the ICC does not have the authority to directly waive motor carrier undercharges. However, in *Negotiated Rates I,* the ICC offered to provide, upon court referral, an "advisory opinion" as to whether, in a particular case, the collection of undercharges constitutes an unreasonable practice.

In late 1988 or early 1989, the auditing company sent notice to Honeywell that

$271,931.04 in undercharges were owed to TSI. Through investigation, Honeywell learned that TSI's petition in bankruptcy was filed on June 10, 1987. Given that the statutory suspension of the statute of limitations under 11 U.S.C. § 108 would expire on June 10, 1989, Honeywell anticipated that litigation would soon be commenced to collect the asserted undercharges.

When the bankruptcy petition for TSI was filed it was assigned to the Honorable Nancy C. Dreher. Although many courts had referred undercharge claims to the ICC for unreasonable practice determinations, some courts had denied referral requests. Judge Dreher had taken a clear position against referral. *Miller v. BTS (In re Total Transportation, Inc.),* 87 B.R. 568, 1988 Federal Carrier Cases (CCH) ¶ 83,370 (D.Minn.1988);[1] *Miller v. Land O'Lakes (In re Total Transportation, Inc.),* 1988 Federal Carrier Cases (CCH) ¶ 83,403. Honeywell's counsel claims to have been, at the time, unaware of Judge Dreher's position on referral. Appellant's Reply Brief at 14.

On June 29, 1989, the ICC issued *National Industrial Transportation League—Petition to Institute Rulemaking on Motor Common Carrier Rates,* 5 I.C.C.2d 623 (1989) (*Negotiated Rates II*). *Negotiated Rates II* modified ICC policy by establishing that the ICC would entertain unreasonable practice claims without awaiting court referral.

The day that *Negotiated Rates II* came out, and one day before the adversarial proceeding to collect the alleged undercharges was started, Honeywell filed a complaint with the ICC for a declaratory order finding the claimed undercharges to be unreasonable.

TSI informed Honeywell that the initiation of proceedings before the ICC violated the automatic stay provisions of the

---

1. This Court considered the issue of whether undercharge disputes should be referred to the ICC in *Miller v. Armour & Co. (In re Total Transportation),* 84 B.R. 590 (D.Minn.1988). The Court held that, despite the policy announced by the ICC in *Negotiated Rates I,* referral was inappropriate because the applicable statutes and Supreme Court precedent precluded the courts from accepting an advisory opinion from the ICC barring a claim for undercharges on equitable grounds. 84 B.R. at 597–98. Judge Dreher was, in part, following this precedent when she recommended against referral in *Miller v. BTS,* 87 B.R. at 571.

Bankruptcy Code. TSI requested that Honeywell withdraw its pleadings before the ICC and, when Honeywell refused, TSI moved the bankruptcy court for an order finding Honeywell in contempt and imposing sanctions.

In an order filed on July 27, 1989, the bankruptcy court found that Honeywell had "unequivocally, intentionally and willfully" violated 11 U.S.C. §§ 362(a)(1) and 362(a)(3). Order at 2. The bankruptcy court also awarded $1,500 in attorneys' fees and $5,000 in punitive damages to TSI pursuant to 11 U.S.C. § 362(h). Order at 3–4.

Subsequently, on July 17, 1989, the United States Court of Appeals for the Eighth Circuit decided *Maislin Industries v. Primary Steel, Inc.*, 879 F.2d 400 (8th Cir. 1989), *cert. granted*, —— U.S. ——, 110 S.Ct. 834, 107 L.Ed.2d 830 (1990). *Maislin* holds that the reasonableness of a motor carrier's billing practice is a matter within the primary jurisdiction of the ICC. 879 F.2d at 403. The practical effect of that holding is to require courts in the Eighth Circuit to refer undercharge disputes to the ICC. The decision reached by the ICC may be set aside only if it is "arbitrary, capricious or unsupported by substantial evidence." *INF, Ltd. v. Spectro Alloys Corp.*, 881 F.2d 546, 550 (8th Cir.1989).

The courts are split on whether undercharge disputes must be referred to the ICC. The United States Court of Appeals for the Fifth Circuit, in an opinion based on grounds very similar to the Court's decision in *Miller v. Armour & Co. (In re Total Transportation)*, 84 B.R. 590 (D.Minn.1988), has held that the filed rate doctrine precludes a stay of litigation pending referral in undercharge disputes. *Supreme Beef Processors, Inc. v. Yaquinto (In re Caravan Refrigerated Cargo, Inc.)*, 864 F.2d 388, 391–92 (5th Cir.1989). Although the United States Court of Appeals for the Eleventh Circuit approved the ICC's referral policy in a case where the filed tariff was not "plain to the ordinary user,"

*Seaboard System R.R., Inc. v. United States*, 794 F.2d 635 (11th Cir.1986), the district courts within that circuit are split on whether referral is proper in the usual case. *See cases cited in Delta Traffic Service, Inc. v. Knight–Ridder Newspaper Sales, Inc.*, 691 F.Supp. 339, 341 n. 1 (N.D. Ga.1988). The Second and Ninth Circuits have recently joined the Eighth Circuit in holding that the ICC has primary jurisdiction to determine whether undercharge claims constitute unreasonable practices in violation of the Interstate Commerce Act. *Delta Traffic Service, Inc. v. APPCO Paper–Plastics Corp.*, 893 F.2d 472 (2d Cir. 1990); *West Coast Truck Lines, Inc. v. Weyerhaeuser Co.*, 893 F.2d 1016 (9th Cir. 1990).

DISCUSSION

Honeywell now appeals the bankruptcy court's July 27, 1989 order. Several parties have filed amicus curiae briefs because of concerns that shippers' access to the ICC will be limited if shippers must file motions for relief from the automatic stay before initiating a proceeding with the ICC.[2] The issues raised in this appeal are:

1. whether Honeywell's filing of its complaint was subject to the stay provided by sections 362(a)(1) or (3);

2. if Honeywell's actions were subject to the stay, whether those actions come within the exception for governmental enforcement provided by section 362(b)(4); and

3. if Honeywell's actions were subject to the stay and did not come within the governmental enforcement exception, whether the bankruptcy court properly awarded TSI actual and punitive damages.

The bankruptcy court's conclusions of law are subject to de novo review. Its findings of fact are reviewed under the clearly erroneous standard. *In re Briggs Transportation Co.*, 780 F.2d 1339, 1342 (8th Cir.1985); *In re Martin*, 761 F.2d 472, 474–75 (8th Cir.1985); Bankr.R. 8013.

---

**2.** The entities filing amicus curiae briefs are the Interstate Commerce Commission, the National Industrial Transportation League, Armstrong World Industries, Inc., the Health and Personal Care Distribution Conference, Inc., and the National Small Shipments Traffic Conference, Inc.

I. *Whether Honeywell's Filing of Its Complaint with the ICC Violated the Automatic Stay Provided by Section 362*

Subject to exceptions established in subsection (b), section 362 provides that the filing of a bankruptcy petition:

operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

. . . . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

. . . .

Honeywell argues that the bankruptcy court erred in finding that the proceeding initiated before the ICC violated sections 362(a)(1) and (3).

A. Section 362(a)(1)

Honeywell contends that section 362(a)(1) applies only to actions to obtain affirmative relief against the debtor. Characterizing its unreasonable practice claim as a defensive action, Honeywell argues that the stay did not apply to its action. Alternatively, Honeywell contends that its action neither "was [n]or could have been commenced" nor "arose" prior to the filing of the bankruptcy petition and is thus not subject to section 362(a)(1).

1. *Whether the Undercharge Proceeding Before the ICC Constituted an Action "Against the Debtor"*

■ Section 362(a)(1) stays two types of actions: actions "against the debtor that [were] or could have been commenced before the commencement of the case under this title" or actions "to recover a claim against the debtor that arose before the commencement of the case under this ti-

tle." In either case, section 362(a)(1) applies only to actions against the debtor.

This limitation is consistent with the purposes of section 362(a). That section establishes that a bankruptcy petition shall operate as a stay "of various types of actions to obtain affirmative relief against the debtor or his property." *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 995 (5th Cir.1985). The Senate Report stated:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

S.Rep. No. 989, 95th Cong., 2d 54 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5840; *see also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 174, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6135.

Although the proceeding before the ICC was titled *Honeywell Inc. v. Transportation Systems International, Inc., Bankrupt, and Transport Audit Service, Inc.* and would have been defended by TSI, Honeywell is not a creditor of TSI and did not seek to collect or foreclose on assets of TSI. Indeed, the purpose of that action was to address the propriety of claims being asserted by TSI against Honeywell. Honeywell argues that because its action was defensive it was outside the scope of section 362(a)(1).

This argument finds support in *Price & Pierce Int'l Inc. v. Spicers Int'l Paper Sales, Inc.*, 50 B.R. 25 (S.D.N.Y.1985). That case was an interpleader action. Plaintiff Price & Pierce had deposited an interpleader fund with the court. The defendants SIPSI and Papeteries de Belgique claimed entitlement to the fund. SIPSI filed a petition in bankruptcy *one week* after the fund was created. SIPSI contended that, under section 362, its petition operated as a stay of the interpleader ac-

tion. The court ruled that the stay should not apply where the debtor, although nominally a defendant, was in fact advancing a claim in the action. *Price & Pierce* has been cited with approval by the United States Court of Appeals for the Sixth Circuit and followed by the Northern District of California. *Walters v. First Tennessee Bank, N.A. Memphis*, 855 F.2d 267, 271 (6th Cir.1988) (automatic stay would not apply where debtor was nominal defendant in derivative action), *cert. denied*, —— U.S. ——, 109 S.Ct. 1344, 103 L.Ed.2d 812 (1989); *Rett White Motor Sales Co. v. Wells Fargo Bank*, 99 B.R. 12 (N.D.Cal. 1989) (counterclaims for interpleader and declaratory relief not subject to automatic stay).

TSI answers this argument by citing case law which states that the position of the parties at the time of the initial proceedings will determine whether an action is "against the debtor." *See, e.g., Teacher Ins. & Annuity Ass'n of America v. Butler*, 803 F.2d 61, 64–65 (2d Cir.1986); *Cathey v. Johns–Manville Sales Corp.*, 711 F.2d 60, 62 (6th Cir.1983); *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel*, 682 F.2d 446, 449 (3d Cir.1982). In each of these cases, however, the courts were considering whether the stay was applicable to an appeal by the debtor in an action originally brought against the debtor by a creditor. *Cf. Freeman v. Commissioner of Internal Revenue*, 799 F.2d 1091, 1092–93 (5th Cir.1986) (stay not applicable where initial proceeding brought by debtor).

The Court holds that section 362(a)(1) was not applicable to Honeywell's action before the ICC because that action was not "against the debtor," as provided in that section. Honeywell's action was a response to claims asserted by the debtor, TSI, for undercharges. Responding to a recent decision by the ICC to accept petitions concerning undercharge disputes without a prior court referral, Honeywell filed a complaint seeking a declaratory or-

der establishing that collection of the alleged undercharges constituted an unreasonable practice. In its complaint, Honeywell did not seek any property of the estate or the debtor.[3] Although TSI is nominally a defendant, the action is in fact an effort by Honeywell to defend itself from claims asserted by TSI. It is within neither the letter nor the spirit of the statute to regard the automatic stay as applying to such an action.[4] The purpose of the stay is "to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors ... thereby preventing a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" *In re Holtkamp*, 669 F.2d 505, 508 (7th Cir.1982) (citation omitted), *quoting In re Frigitemp Corp.*, 8 B.R. 284, 289 (S.D.N.Y.1981). Honeywell's action did not assert a claim against the estate or threaten to disrupt the liquidation procedure established by the Code. Accordingly, Honeywell's action should not be stayed as an action "against the debtor."

### 2. Whether Honeywell's Action is a Pre–Petition Claim Subject to the Stay

The stay provided by section 362(a)(1) applies only to pre-petition claims, that is, claims which were or could have been commenced before the bankruptcy petition was filed or claims that arose prior to the filing of the petition. As an alternative argument, Honeywell argues that although the undercharges stem from transactions which took place before the bankruptcy petition, the relationship between the parties was in repose until the audit of TSI. Because the audit was done after TSI's bankruptcy petition was filed, the undercharge dispute must be treated as a post-petition claim.

---

3. See *infra* section I(A)(2).

4. The shield of 11 U.S.C. Section 362, which is procedural and vests no intrinsic interest in property to the estate, should not be used as a sword to divest other parties of legitimate

interests in property particularly where the debtor has the knowledge and means to bring whatever claim he may have for use of the funds on for prompt hearing. *In re Edgins*, 36 B.R. 480, 484 (Bankr.App. 9th Cir.1984).

■ Honeywell's position is not supported by the law. Except in the Third Circuit, a claim is considered to arise, for bankruptcy purposes, at "the time when acts giving rise to the alleged liability were performed." *In re Johns–Manville Corp.*, 57 B.R. 680, 690 (Bankr.S.D.N.Y.1986). This is true even though at the time the acts giving rise to liability were performed the claimant had not discovered his or her injury and did not have access to the courts. *In re Edge*, 60 B.R. 690, 699 (Bankr.M.D.Tenn.1986). Thus, in this case, TSI's claim arose at the time Honeywell paid TSI less than the applicable tariff rate and must be considered pre-petition. *See, e.g., In re Wisconsin Barge Lines, Inc.*, 91 B.R. 65, 67–68 (Bankr.E.D.Mo.1988) (claim by the United States for a fine imposed after bankruptcy petition filed for conduct occurring prior to filing was pre-petition claim); *In re A.H. Robins Co., Inc.*, 63 B.R. 986, 993–94 (Bankr.E.D.Va.1986), (Dalkon Shield claim is pre-petition claim even though injury was not discovered until after petition was filed) *aff'd*, 839 F.2d 198 (4th Cir.), *cert. dismissed,* — U.S. —, 109 S.Ct. 201, 101 L.Ed.2d 972 (1988); *In re Baldwin–United Corp.*, 48 B.R. 901, 903–04 (Bankr.S.D.Ohio 1985) (creditors could not commence or continue any third-party suits for contribution without first seeking determination from bankruptcy court as to applicability of stay).

Honeywell would have this Court rely on the United States Court of Appeals for the Third Circuit's holding in *In re M. Frenville Co., Inc.*, 744 F.2d 332 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). That case held that the automatic stay provision of section 362 did not apply to a claim for indemnification arising out of pre-petition conduct where the indemnity claim could not have been brought until the post-petition filing of the primary cause of action. 744 F.2d at 337. Under *Frenville*, a claim would not arise until the creditor's right to payment of the claim arises. *See In re TM Carlton House Partners, Ltd.*, 93 B.R. 859, 868 (Bankr.E. D.Pa.1988). This holding has been roundly criticized. *See Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198, 202 (4th Cir.1988) and authorities cited therein; *see also* R. Mabrey and A. Jarvis, *In re Frenville: a Critique by the National Bankruptcy Conference's Committee on Claims and Distributions*, 42 Business Lawyer 697 (1987).

Although the Eighth Circuit has not directly addressed the question of when a claim arises for bankruptcy purposes, it appears very unlikely that the court would follow *Frenville*. On this issue, then, the Court finds that the claims at issue arose before the petition was filed and are subject to the stay if those claims are considered claims "against the debtor." Nevertheless, because the claims are not claims "against the debtor," the Court finds that the stay provided by section 362(a)(1) does not apply to Honeywell's proceeding before the ICC.

**B. Section 362(a)(3)**

■ Under section 362(a)(3), a bankruptcy petition operates as a stay of:

> any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

The question posed by this case is whether Honeywell, by seeking an ICC determination of whether TSI's claim for undercharges constituted an unreasonable practice, committed an act to obtain possession of or exercise control over property of the estate.

Arguing in the affirmative, TSI cites *In re S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir.1987) and *In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir.1983). In those cases, the Fifth Circuit extended the section 362(a)(3) stay to suspend a creditor's actions against third parties related to the debtor.[5] The decisions stand for two principles. First, the cases hold that property the debtor has fraudulently conveyed remains "property of the estate." 817 F.2d at 1152–53; 714 F.2d at 1275. Second, the

---

**5.** In *S.I. Acquisition,* the actions were against the debtor's parent corporation and principal. In *MortgageAmerica,* the actions were against the debtor's *sole* stockholder and *control* person.

cases hold that, with regard to actions for the recovery of the debtor's property, the Code substitutes collective creditor conduct and debtor control of the reorganization process for unilateral creditor action. 817 F.2d at 1153–54; 714 F.2d at 1275–76.

*S.I. Acquisition* and *MortgageAmerica* have little application to this case. The cause of action at issue here is not one brought by one creditor "based upon allegations that if proven would benefit all of [the debtor's] creditors." 817 F.2d at 1153. Much more analogous are the interpleader cases discussed above in connection with section 362(a)(1). In those cases, the debtor is one of several claimants to an interpleader fund. The courts uniformly hold that the interpleader action is not stayed under section 362(a)(3). The interpleader action is not considered to have the object of obtaining possession of property of the estate despite the fact that the action will resolve conflicting claims and distribute the fund among the claimants. *Holland America Insurance Company v. Succession of Roy*, 777 F.2d 992, 996 (5th Cir. 1985); *Dakota Livestock Co. v. Keim*, 552 F.2d 1302, 1305 (8th Cir.1977) (under Bankruptcy Act, right to interplead funds not affected by fact that one of claimants is trustee in bankruptcy); *Rett White Motor Sales Co. v. Wells Fargo Bank*, 99 B.R. 12, 14 (N.D.Cal.1989); *National Cooperative Refinery Ass'n v. Rouse*, 60 B.R. 857, 860 (D.Colo.1986) ("because the purpose of this interpleader is to determine title to the *res*, the *res* is not at this point property of any 'debtor' within the meaning of the automatic stay provisions of 11 U.S.C. § 362(a)").

The Court therefore holds that Honeywell's action before the ICC was neither an effort to obtain possession of the debtor's property nor an effort to exercise control over the debtor's estate. Thus, Honeywell has not violated either section 362(a)(1) or (3).

Because the Court finds that Honeywell has not violated the automatic stay provision of the Bankruptcy Code, the July 27, 1989 Order of the bankruptcy court will be reversed in all respects. The remaining issues raised by the parties need not be reached.

Accordingly, based on the foregoing, and upon all the files, records and proceedings in this case,

IT IS ORDERED that:

1. the July 27, 1989 order of the bankruptcy court is reversed; and

2. the case is remanded to the bankruptcy court for further proceedings consistent with this opinion.