In re Jack Jacob **GRYNBERG** and Celeste C. Grynberg, Debtors.

Jack J. **GRYNBERG** and Celeste C. Grynberg, Respondents/Appellants,

v.

**DANZIG CLAIMANTS,**
Applicants/Appellees.

Civ. A. No. 90 F 965.
Bankruptcy Nos. 81 B 00821C,
81 B 00825 C.

United States District Court,
D. Colorado.

Oct. 11, 1990.

Neil E. Ayervais, Lohf, Shaiman & Ross, Denver, Colo., for Jack J. Grynberg.

William D. Scheid, Scheid & Horlbeck, Denver, Colo., for Celeste C. Grynberg.

James C. Ruh, Jensen, Byrne, Parsons & Ruh, Denver, Colo., Sandra J. Shapiro, Bancroft, Avery & McAlister, San Francisco, Cal., for Danzig claimants.

## ORDER

SHERMAN G. FINESILVER, Chief Judge.

Appellants Jack J. Grynberg and Celeste C. Grynberg bring this appeal from the United States Bankruptcy Court for the District of Colorado. They challenge the bankruptcy court's Order on Motion for Payment of Costs, dated April 17, 1990, and Order on Motion for Reconsideration, dated May 18, 1990. These Orders allow payment to appellees of costs incurred in appellate proceedings from a California judgement in favor of the Danzig claimants.

Appellate jurisdiction is based on 28 U.S.C. 158 and Rule 8001(a) of the Rules of Practice and Procedure in Bankruptcy. After examination of the briefs and appellate record, the court has determined that oral arguments would not be of material assistance to the determination of this appeal. Bankr.R. 8012. The court has reviewed the briefs by the parties, the record on appeal, and the applicable law. For the reasons stated below, the decision of the bankruptcy court is AFFIRMED.

## I.

On December 20, 1980, a class action judgment was obtained against the Grynbergs in the Superior Court in and for the County of Alameda, State of California. On February 20, 1981, the Grynbergs filed separate Chapter 11 bankruptcy petitions. On May 11, 1981, the bankruptcy court granted the Grynbergs leave to appeal the California decision. The California Court of Appeals affirmed the judgment of the trial court on November 1, 1984. Both the California Supreme Court and the United States Supreme Court denied certiorari. On March 11, 1985, pursuant to Section 1034 of the California Code of Civil Procedure, the Danzig claimants, as the prevailing parties in the California appeal, filed a Memorandum of Costs associated with the appeal.

The Danzig claimants sought allowance of their claims in bankruptcy court in October, 1985. On July 9, 1986, the bankruptcy court ordered that these claims be allowed. The Grynbergs appealed that decision. The United States District Court and the Tenth Circuit both affirmed the bankruptcy court decision. The United States Supreme Court denied certiorari on October 2, 1989.

In December of 1989, the Danzig claimants moved for payment of the costs reflected in the 1985 Memorandum of Costs. They sought to collect out of a deposit established by the bankruptcy court to secure amounts due the Danzig claimants. The Grynbergs opposed the motion. The Grynbergs argued that the Danzig claimants had failed to request relief from the automatic stay in bankruptcy before filing their Memorandum in 1985. The Danzig claimants responded that the costs were post-petition costs and not affected by the stay. The bankruptcy court granted the motion, concluding that the appellate costs were the result of voluntary post-petition acts of the Grynbergs and hence not encompassed within the automatic stay. This appeal arises from that decision.

## II.

A bankruptcy court's findings of fact will be upheld unless clearly erroneous. *In re Mullet,* 817 F.2d 677, 678 (10th Cir.1987); *In re Branding Iron Motel, Inc.,* 798 F.2d 396, 397 (10th Cir.1986); *In re Yeates,* 807 F.2d 874, 876 (10th Cir.1986).

Legal conclusions of the bankruptcy court are subject to de novo review. *Mullet*, 817 F.2d at 679; *Branding Iron*, 798 F.2d at 399–400; *Yeates*, 807 F.2d at 877.

### III.

Bankruptcy Code section 362 stays proceedings against a debtor which were, or could have been, commenced before the filing of the bankruptcy petition. Proceedings to recover a claim which arose prior to the filing of the petition in bankruptcy are also subject to the automatic stay in bankruptcy. 11 U.S.C. 362(a)(1). Claims arising subsequent to the bankruptcy petition are not subject to the stay.[1] *Turner Broadcasting System, Inc. v. Sanyo Electric, Inc.*, 33 B.R. 996, 999 (N.D.Ga.1983), aff'd, 742 F.2d 1465 (11th Cir.1984). "[D]ebts coming into existence after the filing of a petition in bankruptcy are not affected by discharge; hence, they cannot justify a stay of proceedings against the bankrupt." *In re Shenberg*, 433 F.Supp. 677, 690 (N.D.Ill.1977).

Determining when a claim actually arose for purposes of the Bankruptcy Code is an uncertain area of the law. A majority of courts have found that a claim arises when the debtor acts to create the obligation. "[A] claim is considered to arise, for bankruptcy purposes, at 'the time when acts giving rise to the alleged liability were performed.'" *In re Transportation Systems International, Inc.*, 110 B.R. 888, 894 (D.Minn.1990) citing *In re Johns–Manville Corp.*, 57 B.R. 680, 690 (Bankr.S.D.N.Y. 1986). Even when legal action to enforce the claim is not taken until post-petition, the courts will apply the automatic stay in bankruptcy to a claim resulting from pre-petition actions. "Relying on Congress' expansive definition of 'claim', courts have applied bankruptcy discharges and automatic stays to post-petition claims arising out of the debtor's pre-petition conduct ...." *L.F. Rothschild & Co., Inc. v. Angier*, 84 B.R. 274, 277 (D.Mass.1988).

The Grynbergs argue that the Danzig claimants had an unmatured, contingent right to payment of costs incurred in defending the appeals and that this amounted to a pre-petition claim. After the judgment was entered in the California Superior Court, appellees' right to costs was conditioned only upon their prevailing in any subsequent appeal. Therefore, appellants assert that the claim actually arose with the California judgement in 1980.

*In re: Hadden*, 57 B.R. 187 (Bankr. W.D.Wis.1986), cited by appellees' and relied on by the bankruptcy court, illuminates the issue. In *Hadden*, debtor instituted a state court breach of contract action against a construction company in October 1983. Later that month, the construction company counterclaimed for attorney's fees, as provided for in the contract. In June, 1984, debtor filed a petition under Chapter 7. In January of 1985, the state court dismissed debtor's action and awarded attorney's fees to the construction company. The bankruptcy court found that the court's discretionary decision to award attorney fees was a contingent claim contemplated by the Bankruptcy Code. *Id.* at 189.

However, the court held that the claim for attorney fees was a post-petition claim. As such, it was not subject to discharge or the automatic stay in bankruptcy. "[B]ankruptcy was intended to protect the debtor from the continuing costs of pre-bankruptcy acts but not to insulate the debtor from the costs of post-bankruptcy acts." *Id.* at 190. By voluntarily continuing the litigation after filing under Chapter 7, the debtor had "resurrected" the attorney's fees provision of the construction contract. The attorney fees incurred were therefore post-petition claims.

The policy behind the stay of proceedings supports this result.

> A principal goal of bankruptcy is to provide the debtor with reasonable exemp-

---

1. The Bankruptcy Code clearly gives a broad meaning to the term "claim". Claims include a "... right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal equitable, secured, or unsecured; ..." 11 U.S.C. 101. Clearly, appellees' Memorandum of Costs is a claim within this definition.

tions and a fresh start. Allowing the debtor to discharge attorney's fees incurred in the post-petition pursuit of dubious claims might invite egregious abuses, while not allowing discharge of attorney's fees that might prevent debtors from pursuing 'reasonable exemptions' which are in the form of lawsuits. The balance must be struck so that post-bankruptcy acts on the part of the debtor cannot be taken with impunity.

*Hadden*, 57 B.R. at 190. When a debtor revives pre-petition claims, or acts in such a way as to create new claims, the resulting obligations are not subject to the stay in bankruptcy. "If the debtor chooses to enjoy his fresh start by pursuing pre-petition claims which have been exempted, he must do so at the risk of incurring the post-petition costs involved in his acts." *Id.*

■ The case at hand is similar. The December 1980 class action judgment was dischargeable under the Grynberg's plan of reorganization. The Grynbergs voluntarily chose to pursue their appeal after filing petitions in bankruptcy in February of 1981. They petitioned for, and received, permission from the bankruptcy court to continue their appeal in May of 1981. In electing to pursue their appeal after filing for bankruptcy, the Grynbergs were acting "... at the risk of incurring the post-petition costs involved in [their] acts." *Id.*

The precedent cited by appellants is not inconsistent with this result. Those cases involve pre-petition actions of a debtor leading to a claim which was not asserted until after the filing of the bankruptcy petition. "In all of these cases, there was some direct prepetition privity, contact, impact, or hidden harm to the ultimately injured plaintiff or indemnity claimant." Order on Motion for Payment of Costs, 113 B.R. 709 (Bankr.Colo.1990). For example, the law clearly states that claims for indemnification or contribution based upon a pre-petition contract or transaction are pre-petition claims. *In re Christian Life Center*, 821 F.2d 1370 (9th Cir.1987); *In re Amfesco Industries, Inc.*, 81 B.R. 777 (Bankr. E.D.N.Y.1988); *In re Black*, 70 B.R. 645 (Bankr.D.Utah 1986); *In re Johns–Manville*, 57 B.R. 680 (Bankr.S.D.N.Y.1986). Likewise, legal claims arising out of pre-petition conduct of the debtor are pre-petition claims, even if filing suit against the debtor prior to the petition in bankruptcy was impossible. *In re Transportation Systems International, Inc.*, 110 B.R. 888 (D.Minn.1990); *In re A.H. Robins Co., Inc.*, 63 B.R. 986 (Bankr.E.D.Va.1986). Claims for attorney's fees based upon pre-petition agreements are also pre-petition claims. *In re Jensen*, 113 B.R. 51 (Bankr.D.Utah 1990); *In re Tri–State Homes, Inc.*, 56 B.R. 24 (Bankr.W.D.Wis.1985). In this case, there was no pre-petition agreement entitling appellees to costs on appeal. These costs would not have been incurred had the Grynbergs not decided to continue the appellate process.

Appellants criticize the bankruptcy court's reliance on *In re M. Frenville Co., Inc.*, 744 F.2d 332 (3rd Cir.1984). As the bankruptcy court notes in the Order on Motion for Payment of Costs, filed April 16, 1990, the *Frenville* decision has been discredited and is generally not followed outside of the Third Circuit. In *Frenville*, the determining factor was not when the action giving rise to the claim occurred, but when the claimant has a cause of action against the debtor. "Pre-petition acts by a debtor, by themselves, are not sufficient to cause the automatic stay to apply." *Id.* at 335. We agree with the bankruptcy court that *Frenville* unduly narrows the definition of a claim found in the bankruptcy code and decline to follow it in this instance.

However, it is apparent from the record that the *Frenville* decision was not the basis for the bankruptcy court's Orders. In the Order on Motion for Payment of Costs, the bankruptcy court carefully discussed the criticisms of *Frenville* and found them to be valid. In the Order on Motion for Reconsideration, *Frenville* is cited for the narrow proposition that the automatic stay does not apply to post-petition costs. *Frenville* is not cited for any other legal principle.

### IV.

Appellants further argue that the bankruptcy court erred in holding that the automatic stay was modified to allow the appeal. They assert that relief from the stay

was not requested by the debtors. Notice and a hearing, as required by section 362(d), were not provided. The bankruptcy court did not make a finding of cause. 11 U.S.C. 362(d)(1). As the court is satisfied that the appellate costs are post-petition costs, it is unnecessary to reach this issue.

### V.

In their brief, the Danzig claimants request sanctions under 28 U.S.C. 1927. Appellees contend that the current appeal is frivolous and is a bad faith abuse of the judicial process. "Grynbergs' instant appeal ... is patently frivolous and could only have been brought in bad faith." Appellees' Brief, page 12. The question of appellate costs raised in this appeal is one of first impression. The classification of claims into post- and pre-petition claims is an evolving area of law, as the controversy surrounding the *Frenville* decision indicates. In light of the uncertainty in the law, we cannot agree that this appeal is without merit.

ACCORDINGLY, IT IS ORDERED that the decision of the bankruptcy court is AFFIRMED. Appellees' request for sanctions under 28 U.S.C. 1927 is DENIED.