**In re GORDONS TRANSPORTS, INC., Debtor in Chapter 7, (Originally filed under Chapter 11),**

**A.J. CALHOUN, Trustee for Gordons Transports, Inc., Plaintiff,**

v.

**COPELAND CORPORATION, Defendant.**

**Bankruptcy No. 83–2048. Adv. No. 84–0247.**

United States Bankruptcy Court, W.D. Tennessee, W.D.

Feb. 5, 1985.

David G. Sperry and Louis J. Wade, Kansas City, Mo., for plaintiff.

Philip E. Langer, and Jon M. Sebaly, Dayton, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM B. LEFFLER, Bankruptcy Judge.

In the instant proceeding the Defendant, Copeland Corporation ("Copeland"), moves the Court for an Order dismissing the complaint for turnover of property pursuant to 11 U.S.C. § 542(b) and a money judgment filed by the Plaintiff, A.J. Calhoun, Trustee for Gordons Transports, Inc. ("Gordons"), the above-named Chapter 7 Debtor. Copeland asserts that this Court does not have primary jurisdiction over Gordons' complaint and that Gordons' claim is an improper action for turnover of property under section 542(b) of the Bankruptcy Act.

Gordons seeks to recover debts allegedly owed by Copeland to Gordons for transportation services provided by Gordons from April of 1980 through March of 1983. Gordons avers that the freight bills that were submitted to and paid by Copeland were erroneously based upon a lawful, however, inapplicable tariff, thus entitling Gordons to recover the difference between what the tariff should have been and the sum that was actually paid by Copeland.[1]

In its motion to dismiss, Copeland contends that this Court, or any court, is without jurisdiction over the controversy because Gordons' claim involves the application of tariff rates. Copeland argues that the Interstate Commerce Commission

---

1. The dispute as to which tariff rate is applicable to the goods that were shipped by Gordons at the request of Copeland arose after Gordons filed its Petition in Bankruptcy and an audit of the freight bills was performed, pursuant to an Order of this Court.

("ICC") has primary jurisdiction in this case because it has special expertise to determine the proper tariff rate applicable to the transactions between the parties before the Court. Copeland cites in its brief a number of cases that it claims stand for the proposition that the ICC has primary jurisdiction to determine any question that deals with the application of a tariff rate.

Copeland's perception of the doctrine of primary jurisdiction is somewhat distorted, and understandably so. This judge-made doctrine originated in the case of *Texas & Pacific R. Co. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907). In *Abilene Cotton* an oil company sued a railroad, seeking to recover charges paid in excess of what was a just and reasonable tariff rate.[2] The Interstate Commerce Act provided: "Nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies." Despite language in the statute specifically allowing court suits for damages for unreasonable tariff rates, the Supreme Court held that since the shipper's claim was based upon the unreasonableness of the established tariff rate, the shipper must seek its remedy through the ICC. The Court's reasoning was that if courts and juries were allowed to determine reasonableness of rates, uniformity would be impossible.

The scope of the *Abilene Cotton* opinion was inordinately broad. Subsequent ICC cases served to limit the primary jurisdiction doctrine and clarify for the courts when the doctrine should be invoked. The leading case in this area is *Great Northern R. Co. v. Merchants Elevator Co.,* 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922). In a most scholarly opinion, Mr. Justice Brandeis both clarifies the function of the doctrine of primary jurisdiction and explains how the courts should apply the doctrine.

The purpose of the primary jurisdiction doctrine is to guide a court in determining whether to refrain from exercising its jurisdiction until after an administrative agency has made a ruling concerning some question involved in the case before the Court. If a court determines that an agency has primary jurisdiction, it will either dismiss the case or simply postpone any action on the case until the agency makes a ruling. The Supreme Court stated: "The very purpose of providing either an exclusive or an initial and preliminary administrative determination is to secure the administrative judgment either, in the one case, in substitution for judicial decision or, in the other, as foundation for or perchance to make unnecessary later judicial proceedings. *Aircraft & Diesel Equipment Corp. v. Hirsch,* 331 U.S. 752, 767, 67 S.Ct. 1493, 1500, 91 L.Ed. 1796 (1947).

It is clear that a court should apply the doctrine of primary jurisdiction in the following circumstances: where a party is asserting that a tariff rate, rule, or practice is unreasonable or unjustly discriminatory; where the question involves technical matters over which the ICC has discretion and the determination should be made by the ICC in order to secure uniformity; where complex and technical cost allocation and accounting problems are involved and the determination would involve voluminous and conflicting evidence and the ICC is better suited to make the determination because of its acquaintance with the many intricate facts of transportation. In determining whether or not to resort to administrative judgment, a court must appraise the character of the controverted question and the nature of the inquiry necessary for its solution. *Merchants Elevator,* 259 U.S., at 291, 42 S.Ct. at 479.

In the case at bar, the primary issue before this Court is whether the commodities that were shipped by Copeland were stampings or castings. Gordons contends that the commodities were improperly clas-

**2.** The oil company also alleged that the tariff rate was discriminatory, preferential, and in violation of the long and short haul provision.

sified as castings, resulting in the application of the wrong tariff rate. Thus, the Court is called upon to construe and interpret two tariffs in determining which tariff rate is applicable. Copeland does not contend that either tariff rate is unreasonable or unjustly discriminatory, nor does Copeland assert that the terms stampings or castings are so technical that they could only be understood by a body of experts.

■ This Court holds that the doctrine of primary jurisdiction is inapplicable to the instant proceeding. It is admitted by the parties that one of two tariff rates apply. The only question is whether the commodities that were shipped should be classified as stampings, and thus Gordons would be allowed to recover for the undercharges, or whether the commodities were properly classified as castings. This question, we believe, can properly be adjudicated by this Court. This Court is asked to construe and interpret the plain and simple terms of two tariffs and determine which tariff is applicable. The commodities shipped by Copeland were described on the bill of lading as an iron or steel stamping. Gordons contends that the applicable tariff is one that describes "iron or steel stampings"; Copeland contends that the applicable tariff is one that describes "castings, NOI, or forgings, NOI." These terms are well within the Court's purview to construe and interpret.

This is a question of simple construction where timely, expensive deferral to the ICC should be avoided. Other courts have held the doctrine of primary jurisdiction inapplicable to simple construction issues. See, e.g., *Louisiana & Arkansas Railway Company v. Export Drum Company*, 359 F.2d 311 (5th Cir.1966); *Norfolk & Western Ry. Co. v. B.I. Holser & Co.*, 629 F.2d 486 (7th Cir.1980); *Illinois Central Gulf Railroad Co., v. Tabor Grain Co.*, 488 F.Supp. 110 (N.D.Ill.1980).

The second question is whether Gordons' claim is a proper action for a turnover order under 11 U.S.C. § 542(b).

Section 542(b) states as follows:

"(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor."

■ It is Copeland's position that Gordons' claim seeking a turnover order is improper because there exists a bona fide dispute as to whether such debt is owing, thus, the debt is not one that is "matured", "payable on demand", or "payable to order" as required by section 542(b). Copeland argues that section 542(b) applies only to undisputed liquidated debts. The Court disagrees. It is this Court's reading of section 542(b) that the terms "matured", "payable on demand", and "payable to order" refer to debts that are presently payable, as opposed to those that are contingent and become payable only upon the occurrence of a certain act or event.

■ The debt owed by Copeland to Gordons is "matured" because the duties under the contract were fully performed and Copeland makes no claim of incomplete or improper delivering of the commodities.

The dispute as to the existance of the debt, that is, whether Gordons undercharged Copeland for transportation services by application of the wrong tariff rate, is a question that can be decided by this Court during the course of the turnover proceeding. In the case of *In Re Fulghum Construction Corporation*, 23 B.R. 147 (Bkrtcy.Ct.M.D.Tenn.1982), the trustee sought to recover, under section 542(b), sums alleged to be due under contract. In deciding whether the defendant was entitled to set-off under section 553, the Court determined the existence of the debt. The Court's determination that the disputed debt did, in fact, exist was part of the turnover proceeding. This Court concurs with Judge Lundin's practice in the *Fulghum* case of determining the issue of the existence of the debt as part of the turnover proceeding.

IT IS THEREFORE ORDERED THAT:

Copeland's motion is denied and the cause will be tried by this Court.