**In re COMMERCIAL FINANCIAL SERVICES, INC., and CF/SPC NGU, Inc., Debtors.**

**Commercial Financial Services, Inc., Plaintiff,**

v.

**William R. Bartmann and Kathryn A. Bartmann, Defendants.**

Bankruptcy Nos. 98–05162–R, 98–05166–R.

Adversary No. 99–0006–R.

United States Bankruptcy Court, N.D. Oklahoma.

April 21, 2000.

Larry M. Wolfson, Jerry L. Switzer, Jr., Jenner & Block, Chicago, IL, Neal Tomlins, Ronald E. Goins, Tomlins & Goins, Tulsa, OK, Jay Geller, Law Office of Jay S. Geller, Portland, ME, for plaintiff.

James Reed, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, OK, for defendant.

### MEMORANDUM OPINION REGARDING DEFENDANTS' MOTION TO DISMISS OR ABSTAIN AND RECOMMENDATION TO DISTRICT COURT REGARDING DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE

DANA L. RASURE, Bankruptcy Judge.

### I. Procedural history

On December 11, 1998, Plaintiff Commercial Financial Services, Inc. ("CFS") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. CFS is a debtor in possession pursuant to 11 U.S.C. § 1107. On January 11, 1999, CFS filed its Complaint against William R. Bartmann and Kathryn A. Bartmann (the "Bartmanns") alleging that each of the Bartmanns had executed a demand note, that CFS has made demand for payment of the note, that the Bartmanns have failed and refused to honor the demand for payment, that CFS is entitled to recover from each of the Bartmanns under 11 U.S.C. § 542 and under a breach of contract cause of action, and further that all claims made by the Bartmanns against the estate should be disallowed under 11 U.S.C. § 502(d) (the "Complaint"). Adversary Docket # 1 ("Doc. 1").

On February 19, 1999, the Bartmanns filed a Motion to Withdraw the Reference and Brief in Support Thereof. Doc. 8. CFS responded to the Motion to Withdraw on March 15, 1999, and the Bartmanns filed a reply brief on March 25, 1999. Doc. 13, 15.

Also on March 25, 1999, the Bartmanns filed their Motion to Dismiss Or Alternatively For Abstention and Brief in Support Thereof ("Motion to Dismiss/Abstain"). Doc. 14. On April 26, 1999, CFS filed its response to Motion to Dismiss or Abstain,

and on May 6, 1999, the Bartmanns replied to CFS's response ("Reply to Response to Motion to Dismiss/Abstain"). Doc. 18, 19.

The Bartmanns have not answered the Complaint, and therefore it is premature to determine whether the Bartmanns dispute the allegations, and if so, on what grounds. The Bartmanns allege generally that allegations in the Complaint are "disputed," but do not provide any hint of what facts are disputed, if any. The Court takes judicial notice of the fact that neither of the Bartmanns has filed a proof of claim or interest prior to the January 31, 2000, claims bar date set by the Court. At this juncture, the Bartmanns have not requested to be allowed to participate in this bankruptcy estate.

Because the Bartmanns' requests for dismissal, abstention and withdrawal of the reference are alternative requests for relief, the Court considers first whether it must dismiss this proceeding outright for lack of jurisdiction or because CFS has failed to state a claim. If dismissal is not mandated, then the Court will determine whether this Court may hear and determine the issues in this proceeding, or whether the state or federal district court is a more appropriate forum for trial.

## II. Motion to Dismiss

The Bartmanns seek dismissal of this proceeding pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7012, contending that this Court lacks jurisdiction to adjudicate the Complaint and that CFS has failed to state a claim upon which relief may be granted.

### A. *Motion to Dismiss pursuant to Rule 12(b)(1)*

The Bartmanns seek dismissal of this proceeding under Rule 12(b)(1) for lack of subject matter jurisdiction on the basis that CFS has "attempt[ed] to manufacture jurisdiction by raising 'turnover' actions."

Reply to Response to Motion to Dismiss/Abstain, at n. 1.

Federal court jurisdiction over bankruptcy cases and proceedings is established pursuant to Section 1334 of title 28 of the United States Code. District courts have original and exclusive jurisdiction of bankruptcy cases (cases that arise under title 11). *See* 28 U.S.C. § 1334(a). District courts have original but non-exclusive jurisdiction over all civil proceedings arising under title 11, or arising in or related to a title 11 case, notwithstanding any statute that otherwise confers exclusive jurisdiction on a court other than the district court. *See* 28 U.S.C. § 1334(b). Further, district courts have exclusive jurisdiction over property of the debtor and property of the estate. *See* 28 U.S.C. § 1334(e).

While the Bartmanns contend that CFS's claims under title 11—those claims asserted pursuant to 11 U.S.C. §§ 542 and 502(d)—are not valid bankruptcy claims but are in reality state law contract claims, the district court clearly has jurisdiction over the claims under Section 1334(b) of title 28, regardless of the characterization of the claims, in light of the undisputed fact that this proceeding is *related to* the bankruptcy case because its outcome may have an effect on the resources available for distribution to creditors of the estate. *See* 11 U.S.C. § 1334(b); *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir.1990) (proceeding is *related to* bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy") (internal quotes and citation omitted).

The district court in turn may refer to bankruptcy courts any or all proceedings arising under title 11, or arising in or related to a case under title 11. *See* 28 U.S.C. § 157(a). On July 10, 1984, the District Court for the Northern District of Oklahoma did in fact refer to the bankruptcy judges in this district all title 11 cases and proceedings "in, under or relat-

ed to" title 11 cases, including, without limitation, "[s]tate law claims or causes of action of the kind referred to at Title 28 U.S.C. § 1334(c)(2)."[1] Rule B–5 of the District Court Rules for Bankruptcy Practice and Procedure, Misc. Order No. M–128, dated April 11, 1985. This Court therefore has jurisdiction of this proceeding pursuant to Section 157(a) and Rule B–5 because this is a proceeding in, under and/or related to CFS's bankruptcy case.

■ Even if the claims under title 11 were dismissed, this Court would still have subject matter jurisdiction over the contract claims to the same extent as the district court has jurisdiction.[2] And even though the Bartmanns believe that the federal court should abstain from hearing this proceeding in deference to the state court and state law, their request for abstention does not rob the federal court of jurisdiction—the court may choose to refrain from exercising jurisdiction. Or it may choose to exercise jurisdiction. Or it may recommend that the reference of the proceeding to the bankruptcy court be withdrawn by the district court. The presence of circumstances warranting abstention or withdrawal does not impair this Court's subject matter jurisdiction over proceedings referred to it by the district court.

Thus, this Court has jurisdiction over all aspects of this adversary proceeding. The Bartmanns' motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure is therefore denied.

1. Section 1334(c)(2) provides—
 Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section [1334], the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. 28 U.S.C. § 1334(c)(2). While Section 1334(c)(2) may require the district court to

**B.** *Motion to Dismiss pursuant to Rule 12(b)(6)*

The Bartmanns contend that the proceeding should be dismissed, or in the alternative, that the turnover and the claims disallowance causes of action—that is, the causes of action arising under title 11—should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Federal Procedure. The Bartmanns claim that turnover under Section 542(b) of the Bankruptcy Code is an improper cause of action under the facts pleaded by CFS because Section 542(b) is inapplicable to debts that are disputed and/or unliquidated. They assert that in order for CFS to liquidate its claim against the Bartmanns, CFS must bring its breach of contract action in "a court of competent jurisdiction." Motion to Dismiss/Abstain at 6.

CFS maintains that a plain reading of Section 542(b) permits CFS to obtain turnover of matured debts and debts payable on demand, even if those debts would traditionally be collected under state law and even if liability and amount are disputed.

In evaluating a motion to dismiss for failure to state a claim, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to" CFS. *Summum v. Callaghan,* 130 F.3d 906, 913 (10th Cir.1997) (internal quotes and citations omitted). "[O]nly when it appears that [CFS] can prove no set of facts in support of the claims that would entitle [it]

abstain from hearing proceedings based upon state law claims under certain circumstances, the presence of those circumstances does not mean that jurisdiction is lacking. Abstention is a decision to refrain from exercising jurisdiction; a court must have jurisdiction to affirmatively decline it.

2. The *scope* of this Court's jurisdiction—*i.e.,* whether the Court may enter final orders or may only submit recommended findings of fact and conclusions of law to the district court—is a separate issue that is addressed later in this opinion.

to relief" may the Court dismiss the complaint, or any claim pleaded therein. *Id.* (quotes and citations omitted). Dismissal is appropriate if there is a showing "on the face of the complaint [that there is] some insuperable bar to relief." *United States v. Uvalde Consolidated Independent School District*, 625 F.2d 547, 549 n. 1 (5th Cir.1980), *cert. denied*, 451 U.S. 1002, 101 S.Ct. 2341, 68 L.Ed.2d 858 (1981), *quoting* C. Wright, Law of Federal Courts, 3d ed., at 322. *See also* 5A C. Wright and A. Miller, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 1357 (1990), at n.47, and cases cited therein.

The Bartmanns' motion to dismiss is asserted in the alternative to their motion to withdraw the reference and their motion for abstention. The focus of all of the Bartmanns' motions is their contention that *this* Court should not adjudicate CFS's claims against them in light of the fact that they are not creditors of this estate. The Court will examine the extent of its jurisdiction with respect to each of the claims in turn.

### 1. Breach of contract claims

■ The Court finds that CFS's Complaint clearly alleges a claim for relief for breach of contract. The Complaint alleges that each of the Bartmanns executed a note payable to CFS (copies of which are attached to the Complaint), that CFS made a demand for payment pursuant to the terms of the notes (copies of which are also attached to the Complaint), that the Bartmanns failed to make such payment, and that CFS has been damaged thereby.[3] If CFS proves these allegations, it may be entitled to relief. CFS states a claim for breach of contract against each of the Bartmanns, and therefore such claims should not be dismissed.

■ The Court further concludes that CFS's breach of contract claims against the Bartmanns, who have not asserted a claim against this estate, are not within the "core" jurisdiction of this Court, and therefore this Court cannot yield a binding final order with respect to such claims. *See* 28 U.S.C. § 157(b); *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (*"Marathon"*). Congress lacks constitutional power to grant final adjudicative authority to Article I courts, such as bankruptcy courts, except in connection with federally created—or "public"—rights. *See Marathon*, 458 U.S. 50, 80–86, 102 S.Ct. 2858, 2876–80 *passim* (Brennan J., plurality opinion) and 458 U.S. at 90–92, 102 S.Ct. at 2881–82 (Rehnquist, J. and O'Connor, J. concurring opinion).[4] Mara-

---

**3.** The Court may consider the attached notes and demand letters as part of the Complaint in determining the motion to dismiss. *See* 5A C. Wright and A. Miller, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 1357 (1990), at n.1, and cases cited therein.

**4.** The Supreme Court has not defined the universe of "public rights" and "private rights," but has indicated examples of what are and are not public or private rights, as well as the extent of Congress's authority in assigning the power to vindicate such rights to Article I and Article III courts. In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court summarized a line of such cases as follows:

"Our prior cases support administrative factfinding in only those situations involving 'public rights,' *e.g.*, where the Government is involved in its sovereign capacity under an otherwise valid statute creating enforceable public rights. Wholly private tort, contract, and property cases, as well as a vast range of other cases, are not at all implicated." [*Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n*, 430 U.S. 442, 458, 97 S.Ct. 1261, 1270, 51 L.Ed.2d 464 (1977)]

\* \* \*

In *Crowell* [*v. Benson*, 285 U.S. 22, 51, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932)], we defined "private right" as "the liability of one individual to another under the law as defined" ... in contrast to cases that "arise between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." [Citations omitted].

\* \* \*

[In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69,

thon established that "Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review." *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 584, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985). "[S]tate-law causes of action for breach of contract or warranty are paradigmatic private rights, even when asserted by an insolvent corporation in the midst of Chapter 11 reorganization proceedings." *Granfinanciera, S.A. v. Nord-*

berg, 492 U.S. 33, 56, 109 S.Ct. 2782, 2798, 106 L.Ed.2d 26 (1989).

Thus, because at this time the Bartmanns have not consented to adjudication by this Court, either directly in their pleadings or indirectly by asserting a claim against the estate, this Court does not have authority to enter binding judgments against the Bartmanns with respect to CFS's state law breach of contract claims.[5] The Bartmanns are entitled to the final determination of such claims either by an Article III federal court or by a state court.[6]

---

102 S.Ct. 2858, 2870, 73 L.Ed.2d 598 (1982)], we rejected the view that "a matter of public rights must at a minimum arise 'between the government and others.' " [citation omitted]. We held, instead, that the Federal Government need not be a party for a case to revolve around "public rights." *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S., at 586, 105 S.Ct., at 3335, *id.,* at 596–599, 105 S.Ct., at 3341–3343 (BRENNAN, J., concurring in judgment). The crucial question, in cases not involving the Federal Government, is whether "Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, [has] create[d] a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." *Id.,* at 593–594, 105 S.Ct., at 3339–3340. *See id.,* at 600, 105 S.Ct., at 3343 (BRENNAN, J., concurring in judgment) (challenged provision involves public rights because "the dispute arises in the context of a federal regulatory scheme that virtually occupies the field"). If a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court.

\* \* \*

"[T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a 'public right,' but the latter obviously is not." [*Marathon,* 458 U.S. at 71, 102 S.Ct. at 2871 (BRENNAN, J., plurality opinion)].

*Granfinanciera,* 492 U.S. at 51–56 & n. 12, 109 S.Ct. at 2795–98 & n. 12.

At this juncture, the scope of public rights includes rights created by Congress under a constitutional grant of power which fall within a valid federal regulatory scheme. Public rights may be adjudicated by an Article I court with limited Article III court involvement, *i.e.,* appellate review. Private rights, which include, but are not limited to, rights between private citizens that are created by state law, may not be finally determined by Article I courts.

The corollary concept central to the *Granfinanciera* decision is that a party who has no connection to a proceeding under a valid regulatory scheme (a bankruptcy case, for example) is insulated from adjudication of an otherwise private right by the Article I court to which the regulatory scheme is assigned (the bankruptcy court), notwithstanding that Congress created a federal right under the regulatory scheme that has the same essential features as the private right. Private rights cannot be converted into public rights as against strangers to the regulatory scheme.

5. In the event that the Bartmanns assert a claim against the estate in their future pleadings, or otherwise, they will invoke the equitable jurisdiction of the bankruptcy court which will empower this Court to enter final orders with respect to the parties' claims against each other. *See, e.g.,* Memorandum Opinion Regarding Motion to Dismiss and Motion to Abstain, and Recommendation Regarding Motion to Withdraw Reference, *Commercial Financial Services v. Jay L. Jones,* 251 B.R. 397 (Bankr.N.D.Okla.2000).

6. Because a successful prosecution of the case by CFS would enrich the estate, the breach of

### 2. Turnover claims

■ CFS alleges that it is entitled to an order from this Court requiring the Bartmanns to turn over money owed on the notes pursuant to Section 542(b), which provides—

> (b) Except as provided in subsection (c) [providing protection for good faith transferors without notice or knowledge of the bankruptcy] or (d) [concerning transfers associated with life insurance] of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C. § 542(b). In its Complaint, CFS has pleaded all elements of Section 542(b) to state a claim for relief, and thus the turnover claims are not subject to dismissal on that basis.[7] The question before this Court is whether *it* may exercise its equitable powers to grant CFS the injunctive turnover relief it requests.

Section 157(b)(2)(E) of title 28 of the United States Code confers "core" status to proceedings where a debtor seeks "orders to turn over property of the estate."

Whether Section 542(b), bolstered by the jurisdictional edict of Section 157(b)(2)(E), authorizes a bankruptcy court to exercise its equitable jurisdiction to order an entity that has *not asserted a claim against the estate* to pay a debt owed to the estate is an issue that has not been specifically addressed by the United States Supreme Court or the Tenth Circuit Court of Appeals.

■ The parties' efforts (and many courts' efforts) in resolving this issue have focused on whether a bankruptcy court may liquidate a *disputed* debt in a turnover action before ordering turnover, equating the liquidation with a traditional non-core contract action. Circuit and lower courts that have written on the issue are split in result and diverse in reasoning. For example, compare *Charter Crude Oil Co. v. Exxon Co., U.S.A. (In re Charter Co.)*, 913 F.2d 1575, 1579 (11th Cir.1990) (turnover proceedings cannot be used to liquidate disputed contract claims), to *Hoffman v. Connecticut (In re Willington Convalescent Home, Inc.)*, 850 F.2d 50, 52 n. 2 (2d Cir.1988), *aff'd*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) ("The mere fact that [defendant] denies that it owes the matured debt for [debtor's] services because of a recoupment right does

---

contract claims are clearly "related to" CFS's bankruptcy case. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n. 5, 115 S.Ct. 1493, 1498 n. 5, 131 L.Ed.2d 403 (1995) ("Proceedings 'related to' the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate. [Citation omitted]. The first type of 'related to' proceeding involves a claim like the state-law breach of contract action at issue in [*Marathon*].") *See also Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir.1990) ("[T]he test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy," *quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)).

Therefore, this Court believes that it *may* conduct a trial and recommend findings of

fact (as found by a jury) and conclusions of law to the district court. *See* District Court Rules for Bankruptcy Practice and Procedure, Rule B-5, Misc. Order No. 128 dated April 11, 1985 (referral of related proceedings to bankruptcy courts); 28 U.S.C. § 157(e) (authorizing bankruptcy courts to conduct jury trials with consent of the parties); Order Amending District Court Rule for Bankruptcy Practice and Procedure B-14 "Jury Trials," Misc. Order No. M-128 dated June 21, 1995 (district court designates bankruptcy judges to conduct jury trials pursuant to 28 U.S.C. § 157(e)).

7. Although the Bartmanns contend that they dispute liability on the notes and will assert defenses, the Court may look only to the face of the Complaint, and in a light most favorable to CFS, to determine whether a claim has been stated.

not take the trustee's action outside the scope of section 542(b)") (internal quotes and citations omitted). *Cf. Craig v. McCarty Ranch Trust (In re Cassidy Land and Cattle Co.),* 836 F.2d 1130 (8th Cir.), *cert. denied,* 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988) (action by debtor on note and mortgage was a core turnover proceeding).

Taking the position that a debt that is property of the estate must be liquidated and undisputed in order to be subject to the equitable remedy of turnover are: *Hassett v. BancOhio Nat'l Bank (In re CIS Corp.),* 172 B.R. 748, 759 (S.D.N.Y. 1994) ("An action for turnover of property is core when its purpose is the collection rather than the creation, recognition or liquidation of a matured debt") (internal quotes and citation omitted); *Shields v. Stangler (In re Stangler),* 186 B.R. 460, 465 (Bankr.D.Minn.1995) (Section 542(b) should be interpreted to permit an action for turnover only if debts are matured, payable on demand, or on order, and "not subject to any nonbankruptcy defenses other than set off"); *Ven–Mar of Indian River, Inc. v. Hancock (In re Ven–Mar Int'l Inc.),* 166 B.R. 191 (Bankr.S.D.Fla. 1994) (this court was bound by the Eleventh Circuit *Charter* case, *supra,* to conclude that only undisputed debts can be the subject of a turnover order); *Staats v. Adolfson & Peterson, Inc. (In re Statewide Pools, Inc.),* 126 B.R. 877 (Bankr.S.D.Ohio 1991) (and cases cited therein) (state-law contract disputes cannot be resolved in a turnover proceeding); *Satelco, Inc. v. North American Publishers, Inc.,* 58 B.R. 781, 789 (Bankr.N.D.Tex.1986) (pursuing a disputed prepetition state-law contract claim by invoking equitable remedy of Section 542 was outside the jurisdiction of the bankruptcy court); *Taxel v. Commercebank (In re World Financial Services Center, Inc.),* 64 B.R. 980, 986 (Bankr. S.D.Cal.1986) (agreeing with *Satelco* analysis); *Chick Smith Ford, Inc. v. Ford Motor Credit Co. (In re Chick Smith Ford, Inc.),* 46 B.R. 515 (Bankr.M.D.Fla.1985).

Courts adhering to the plain language of Section 542(b), which does not on its face require that the debt be undisputed in order to be subject to the equitable remedy of turnover are: *Kenston Management Co. v. Lisa Realty Co. (In re Kenston Management Co.),* 137 B.R. 100, 107–08 (Bankr.E.D.N.Y.1992) ("it is not relevant that [all] the defendant[s] dispute the existence of the debt by, perhaps, denying the complaint's allegations, as long as these allegations state the existence of a mature debt") (internal quotes and citations omitted); *Nuckols and Assoc. Security, Inc. v. Bouchard Transp. Co. (In re Nuckols and Assoc. Security, Inc.),* 109 B.R. 294, 296 (Bankr.S.D.Ohio 1989) (collection of "ordinary course of business accounts receivable" may be accomplished through a Section 542(b) action); *Miller v. BTS Transport Services (In re Total Transp., Inc.),* 87 B.R. 568, 574 (D.Minn. 1988) (and cases cited therein) (rejecting argument that a debt is not matured or payable on demand because of a bona fide dispute) (*citing Calhoun v. Copeland Corp. (In re Gordons Transports, Inc.),* 51 B.R. 633, 636 (Bankr.W.D.Tenn.1985)); *Corzin v. Rawson (In re Rawson),* 40 B.R. 167, 170 (Bankr.N.D.Ohio 1984) ("The mere fact that the defendants deny these allegations [of a matured debt] does not take the trustee's action outside the scope of section 542(b)").[8]

With respect to CFS's Section 542(b) claims, the Court finds that the statute is clear and unambiguous that the debt need only be matured, payable on demand, or payable on order—it contains no requirement that the debt be undisputed or liquidated. None of the cases cited by the

8. American Law Reports (Federal) contains two annotations collecting cases on both ends of the spectrum and all points in between at 124 A.L.R.Fed. 531 (1995) ("Action for Collection of Account Receivable as Core Proceeding in Bankruptcy Under 28 U.S.C.A. § 157(b)") and 123 A.L.R.Fed. 103 (1995) ("Action for Breach of Contract as Core Proceeding in Bankruptcy Under 28 U.S.C.A. § 157(b)").

parties addresses the fundamental issue in this case, that is, whether a bankruptcy court may constitutionally assert "core" jurisdiction over turnover proceedings, a power which Congress has specifically bestowed upon bankruptcy courts in enacting 28 U.S.C. § 157(b)(2)(E), when the defendant has *not* asserted a claim against the estate. The resolution of this issue requires consideration of the constitutional limitations on the powers of bankruptcy courts as Article I courts as expressed by the United States Supreme Court decisions discussed previously at length herein.

■ An argument can be made that because Congress enacted Section 542(b), requiring "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order" to pay such debt on the order of the trustee, it created a federal, or public, right, and that enforcement of this right— by ascertaining the validity and extent of the debt and issuing an injunctive order— may be performed by an Article I court in connection with the specialized regulatory scheme established for bankruptcy relief. *See, e.g., Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 54, 109 S.Ct. 2782, 2797, 106 L.Ed.2d 26 (1989). And further, Congress specifically anticipated that the bankruptcy court would enforce this right because Congress placed turnover actions on the list of "core" proceedings over which bankruptcy courts have plenary adjudicatory powers. *See* 28 U.S.C. § 157(b)(2)(E).

■ However, Congress can only legislate within its constitutional authority. In light of the Supreme Court's development of the public rights/private rights dichotomy regarding the constitutional powers of Article I courts, determination of liability on, and the amount of, a debt owed to a debtor in bankruptcy appears to be the adjudication of a private right that, under certain circumstances, Congress cannot legislate away to an Article I court. The adjudication of turnover proceedings, when they involve such private rights against

persons not participating in the regulatory scheme, cannot be constitutionally delegated to the bankruptcy courts, notwithstanding that 28 U.S.C. § 157 purports to assign all core proceedings, including turnover actions, to the bankruptcy court. *See* footnote 4, *supra,* for discussion regarding public rights/private rights.

■ There are, to be sure, constitutional applications of Section 542(b). For example, an entity that has asserted a claim against the estate has affirmatively subjected itself to the core equitable jurisdiction of the bankruptcy court to adjust the debtor-creditor relationship, and thus that entity is subject to all of the provisions of the Bankruptcy Code, including Section 542's powerful injunctive provisions. In *Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), the Supreme Court summarized its prior relevant decisions as follows:

> In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. 492 U.S., at 58–59, and n. 14, 109 S.Ct., at 2799–2800, and n. 14 (citing *Katchen, supra,* 382 U.S., at 336, 86 S.Ct., at 476). If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. *Ibid.* In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction. *Granfinanciera, supra,* 492 U.S., at 57–58, 109 S.Ct., at 2798–2799.... If a party does not submit a claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer.

*Id.* at 44–45, 111 S.Ct. at 331. The power of bankruptcy courts to finally adjudicate

certain matters that may be considered private rights depends upon whether the defendant has subjected itself to the bankruptcy court's power to adjust claims and debts.

■ Section 542(b) explicitly anticipates that the entity owing a debt may also have a claim against the estate; the statute provides that the entity's claim may be setoff against its debt under Section 553 of the Bankruptcy Code. *See* 11 U.S.C. § 542(b). Even if the debt sought to be collected by the debtor is disputed or unliquidated, the bankruptcy court is empowered to determine the extent of claims by and against the estate under its equitable power to adjust the debtor-creditor relationship of those who choose to participate in the bankruptcy estate.

In the absence of the entity's participation in the bankruptcy estate, however, the grant of authority to bankruptcy courts to enter an injunction requiring the turnover of money against an entity that disputes the legitimacy of the debt sought to be collected does not pass constitutional muster. "The crucial question ... is whether 'Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, [has] create[d] a seemingly "private" right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary.'" *Granfinanciera*, 492 U.S. at 54, 109 S.Ct. at 2797, *quoting*

*Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 593–94, 105 S.Ct. 3325, 3339–40, 87 L.Ed.2d 409 (1985). "If a statutory right is not closely intertwined with a federal regulatory program Congress has the power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court." *Granfinanciera*, 492 U.S. at 54–55, 109 S.Ct. at 2797. Upon analyzing the relevant statute, the regulatory program (the Bankruptcy Code) and the connection between the two, the Supreme Court in *Granfinanciera* determined that a trustee's right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2) was not sufficiently intertwined with the regulatory structure to render it a public rather than a private right. *Id.* at 55–56, 109 S.Ct. at 2797–98.

With *Granfinanciera* as precedent, this Court must conclude that a debtor in possession's right to recover a disputed or unliquidated debt owed by a *party who has not asserted a claim against the estate* is also a private right. The Court concludes that when an entity that allegedly owes a debt to the estate is not, or chooses not to be, a creditor of the estate [9] and therefore has not subjected itself to the equitable jurisdiction of the bankruptcy court, that entity has the right to have an Article III court make a final determination as to its liability on the alleged debt.[10]

For this reason, the Court does not find persuasive the authorities cited by the par-

---

9. The Bartmanns may indeed have claims against the estate. With the passing of the claims bar date, the Bartmanns have so far chosen not to participate in the proceedings before the bankruptcy court with respect to the adjustment of the debtor-creditor relationship between themselves and the estate. With respect to claims for which the Bartmanns were not required to file proofs of claims, however, the Bartmanns may still choose to assert such claims in future pleadings in this case. In such an event, the Bartmanns will subject themselves to the equitable jurisdiction of the bankruptcy court and all consequences arising therefrom.

10. The Court notes that the Bartmanns claim a right to jury trial, which is an additional factor this Court must consider in determining whether to recommend dismissal, abstention, or withdrawal of the reference. The Court finds that because the Bartmanns have not asserted claims against the estate, they have not waived their right to jury trial on legal claims. In *Langenkamp, supra,* the Supreme Court held that "[i]f a party does not submit a claim against the bankruptcy estate ..., the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial." *Id.*, 498 U.S. at 45, 111 S.Ct. at 331, *citing Granfinanciera,*

ties that distinguish between disputed and undisputed claims in determining whether a bankruptcy court has authority to order turnover. The plain language of the statute does not make that distinction. The operative fact is whether the party against whom the action has been asserted is entitled to have its debt adjudicated by an Article III court.

 The Court further concludes that for constitutional reasons, at this time it does not have jurisdiction to render final orders on CFS's turnover claims, notwithstanding that such claims are listed as "core" matters over which bankruptcy courts have plenary jurisdiction under 28 U.S.C. § 157(b)(2)(E). The Court finds that the turnover claims are nonetheless "related to" this bankruptcy case because of the impact the result of the litigation could have on the extent of the assets to be distributed by the estate.[11]

### 3. Section 502(d) claim

 Section 502(d) provides in pertinent part—

[T]he court shall disallow any claim of any entity from which property is recoverable under section 542 ... of this title, unless such entity ... has paid the amount, or turned over such property, for which such entity ... is liable under section ... 542 ... of this title.

11 U.S.C. § 502(d).

The Bartmanns contend that (1) the Section 502(d) claim should be dismissed because it presupposes a valid Section 542 claim, and the Bartmanns believe the Section 542 claim should be dismissed; and (2) Section 502(d) presupposes that the Bartmanns assert claims against the estate. The first contention fails because the Section 542 claims have not been dismissed. The second contention fails because although the Bartmanns have not asserted claims against the estate as of the claims bar date, it is *possible* that the Bartmanns may assert claims in future pleadings in this case, or assert claims acquired in the future by assignment or otherwise, or assert administrative claims. Because the Bartmanns are relying upon their non-creditor status to disturb CFS's choice of forum, it would be inappropriate to dismiss the Section 502(d) claim at this time.

Having concluded that the power to finally determine the breach of contract and Section 542 claims resides in a state or federal district court, the question becomes whether this Court should hear the matter as a non-core proceeding and make recommendations to the district court, recommend that the federal district court withdraw the reference of this proceeding, or abstain.

### III. Motion to Withdraw Reference

Motions for withdrawal of reference are governed by 28 U.S.C. § 157(d) ("Section 157(d)"), Rule B–6 of the District Court

---

492 U.S. at 58–59, 109 S.Ct. at 2799. "If the right is legal in nature, then it carries with it the Seventh Amendment's guarantee of a jury trial." *Granfinanciera,* 492 U.S. at 54–55, 109 S.Ct. at 2797.

This is equally true in connection with a turnover proceeding against a party who has not asserted a claim. All issues of fact relating to this nominally equitable proceeding must be decided by a jury unless waived by the defendants.

**11.** In light of the fact that *this* Court does not have power to finally adjudicate the breach of contract and turnover claims, it leaves to the final arbiter the decision as to whether an injunctive order requiring turnover of money

may be entered once the debt is liquidated. In that regard, the Court notes only that the impediments to this Article I court's power to enforce Section 542(b) provisions against a non-creditor may be irrelevant if the reference is withdrawn. The non-creditor status of the Bartmanns is material to determining the powers of the bankruptcy court and the Bartmanns' right to jury trial. The Court declines to speculate as to whether the Bartmanns' non-creditor status restricts the powers conferred upon the district court by virtue of 28 U.S.C. § 1334 to adjudicate non-core civil proceedings arising under title 11 of the United States Code.

Rules, and Rule 5011 of the Federal Rules of Bankruptcy Procedure. Section 157(d) provides—

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The second sentence of Section 157(d)—the mandatory withdrawal provision—does not apply in this proceeding because CFS's claims do not implicate federal laws other than title 11 of the United States Code. Therefore, if the Bartmanns have shown "cause" for withdrawal, the district court has discretion to either withdraw the reference or permit the bankruptcy court to hear the matter and submit proposed findings of fact and conclusions of law.

Rule B–6 provides in relevant part—

A particular proceeding commenced in ... the Bankruptcy Court shall be transferred to the District Court for hearing and trial by a District Judge only in accordance with the procedure below:

(1) A party seeking such transfer shall file a motion therefor in the Bankruptcy Court certifying one or more of the following grounds:

 \* \* \* \* \* \*

(F) Cause exists, within the contemplation of 28 U.S.C. § 157(d), for the withdrawal of the particular proceeding to this District Court (a specification of such alleged cause must be stated).

 \* \* \* \* \* \*

(6) The motion for transfer, together with a written recommendation of a Bankruptcy Judge, shall be transmitted by the Clerk of the Bankruptcy Court to the Clerk of the District Court. The latter shall assign the motion to a District Judge who shall rule *ex parte* or upon such notice as the District Judge shall direct. The ruling shall be filed in the Bankruptcy Court as an order of the District Judge.

(7) In instances where such ruling is not dispositive of the particular proceeding transferred, the proceeding shall go forward to hearing, trial and judgment as the District Judge's order shall direct.

Under the District Court's local rules, the Bartmanns' burden is to show "cause" within the contemplation of 28 U.S.C. § 157(d).

 "Cause" is a case-specific term. Generally, in determining whether the alleged "cause" is sufficient to warrant withdrawing the reference of the matter to the bankruptcy court, district courts should consider factors such as "judicial economy, convenience, and the particular court's knowledge of the facts," promoting uniformity and efficiency of bankruptcy administration, reducing forum shopping, and conserving debtor and creditor resources, as well as whether parties are entitled to a jury trial, and whether the claims involved are "core" bankruptcy proceedings. *In re Sevko, Inc.,* 143 B.R. 114, 117 (N.D.Ill. 1992). *See also Trustees of the UMWA Combined Benefit Fund v. Westmoreland Coal Co. (In re Westmoreland Coal Co.),* 221 B.R. 512 (D.Colo.1998).

With respect to this proceeding, the Court recommends that the district court withdraw the reference upon the completion of discovery unless a claim is asserted by the Bartmanns against the estate in the interim. In the event this Court cannot enter final orders as to the breach of contract and Section 542(b) claims, and the Bartmanns are entitled to a jury trial (*see* footnote 10, *supra* ), judicial economy will be served if trial of this proceeding is conducted in the venue in which all of the

final legal determinations must be made. The Court does not anticipate that the resolution of these claims in district court would occur any sooner or later than if this Court heard the matter and submitted recommended findings of fact and conclusions of law to the district court.

This Court advises the district court that in light of the complexity of the underlying bankruptcy cases, the massive discovery that has been conducted and is being conducted under Bankruptcy Rule 2004, and the existence of at least eleven federal lawsuits focused upon the propriety of the securitizations that financed operations of CFS in which discovery from CFS may be sought, this Court has entered certain discovery management orders in order to consolidate and expedite discovery, control CFS's privileges and the extent of any waiver thereof, minimize duplication and costs attendant to discovery to the estate and all interested parties, and otherwise carefully manage discovery taken by and requested from CFS and other parties in interest in the CFS bankruptcy case. On October 1, 1999, the Court entered an Order Authorizing and Establishing Procedures for Discovery Pursuant to Bankruptcy Rule 2004, which established a Rule 2004 discovery plan including timetables and procedures for obtaining documents and testimony from sixty-nine individuals and entities, and establishing depositories for such documents and transcripts ("Rule 2004 Order"). *See* Docket # 1346 in Bankruptcy Case No. 98–05162–R. CFS and the Bartmanns are both subject to the Rule 2004 Order. Some discovery from the Bartmanns may have already occurred under Rule 2004 Order.

Further, on February 18, 2000, this Court entered its Order Granting in Part CFS's Motion for Protective Order ("Order Granting Motion for Protective Order") (Docket # 1958), which is incorporated into Protective Order No. 2 Governing Limited Waiver of Privileges by Commercial Financial Services, Inc., entered March 9, 2000 ("Protective Order No. 2") (Docket # 1999). In the Order Granting Motion for Protective Order, this Court concluded that it has exclusive jurisdiction over property of the estate, including information and documents possessed or controlled by the estate, and intangible rights related thereto such as CFS's privileges; that discovery addressed to CFS is subject to 11 U.S.C. § 362(b) and parties who are not before this Court are required to obtain modification of the automatic stay prior to issuing discovery requests to CFS; that Protective Order No. 2 governs CFS's privileges and the limited waivers thereof; and that this Court retains jurisdiction to enforce or modify Protective Order No. 2 as justice requires. Protective Order No. 2 governs all discovery requested from CFS.

In light of these discovery management orders, which are applicable to discovery in this adversary proceeding, the Court believes that the district court should defer withdrawing the reference until discovery under the supervision of this Court is complete.[12]

---

12. Many district courts have held that withdrawal of the reference on the ground that a party is entitled to a jury trial should be deferred until the case is "trial ready." *See, e.g., Disbursing Agent of Murray F. Hardesty Estate v. Severson (In re Hardesty),* 190 B.R. 653 (D.Kan.1995); *Hunnicutt Co. v. TJX Companies, Inc. (In re Ames Department Stores, Inc.),* 190 B.R. 157 (S.D.N.Y.1995); *Hayes v. Royala, Inc.,* 180 B.R. 476 (E.D.Tex.1995); *Berger v. Watrous & Ehlers, PC (In re Kirk E. Douglas, Inc.),* 170 B.R. 169 (D.Colo.1994) ("the bankruptcy court has authority, even when a jury trial has been demanded, to supervise discovery, conduct pretrial conferences, and rule on motions"); *Hassett v. BancOhio Nat'l Bank (In re CIS Corp.),* 172 B.R. 748, 763 (S.D.N.Y.1994); *Stein v. Miller,* 158 B.R. 876, 880 (S.D.Fla.1993); *City Fire Equipment Co. v. Ansul Fire Protection Wormald U.S., Inc.,* 125 B.R. 645, 649 (S.D.Ala. 1989). *See also Commercial Financial Services, Inc. v. Brady,* N.D.Okla. Case No. 99–CV–402H (Order Denying Motion to Withdraw Reference) (Doc. 10).

## IV. Request for Abstention

In their Motion to Dismiss/Abstain, the Bartmanns request that this Court voluntarily abstain from adjudicating this proceeding under 28 U.S.C. § 1334(c)(1)—the permissive (or discretionary) abstention provision of this jurisdictional statute.

Section 1334(c)(1) states:

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

■■■■ Abstention is "an extraordinary and narrow exception to the duty of the federal courts to adjudicate controversies which are properly before it." *See, e.g., S.N.A. Nut Co. v. Haagen–Daz Co. (In re S.N.A. Nut Co.),* 206 B.R. 495, 501 (Bankr.N.D.Ill.1997), *quoting Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). "Abstention is the exception rather than the rule." *Id., citing In re Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 6 F.3d 1184, 1189 (7th Cir.1993); *see also Tuli v. Republic of Iraq (In re Tuli),* 172 F.3d 707, 713 (9th Cir. 1999). As the party moving for permissive abstention, the Bartmanns have the burden of establishing that abstention is appropriate under 28 U.S.C. § 1334(c)(1). *See S.N.A. Nut Co.,* 206 B.R. at 501.

■■■■ The well-worn list of factors that bankruptcy courts consider in deciding whether to abstain was originally established in *Republic Reader's Service, Inc. v. Magazine Service Bureau, Inc. (In re Republic Reader's Service, Inc.),* 81 B.R. 422, 428–29 (Bankr.S.D.Tex.1987). *See also Chicago, Milwaukee, St. Paul & Pacific,* 6 F.3d at 1189, *citing Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.),* 912 F.2d 1162, 1167 (9th Cir.1990) (adopting *Republic Reader's* factors). These considerations include (1) the effect that abstention would have on the efficient administration of bankruptcy estate; (2) the extent to which state law issues predominate; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the federal jurisdictional basis of the proceeding; (6) the degree of relatedness of the proceeding to the main bankruptcy case; (7) the substance of asserted "core" proceeding; (8) the feasibility of severing the state law claims; (9) the burden the proceeding places on the bankruptcy court's docket; (10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of parties; (11) the existence of a right to jury trial; and (12) the presence of nondebtor parties in the proceeding.

■■■■ This Court sees no compelling reason to abstain rather than recommend withdrawal of the reference for trial. Importantly, because there is no parallel state proceeding in which this matter might be litigated, abstention would effectively amount to a dismissal, which would unnecessarily require CFS to begin proceedings anew. Also in absence of parallel state proceedings, the consideration of comity for or deference to state courts evaporates. The availability of the federal district court forum remedies the constitutional deficiencies previously addressed in this recommendation and offers an indisputable forum in which a jury trial may be conducted. The state law claims are rudimentary breach of contract claims; the more difficult issues arise under federal law. Finally, severance of claims would be inefficient; CFS's state and federal claims should be determined contemporaneously and in the same forum.

Thus, this Court declines to abstain from, and consequently dismiss, this proceeding.

## V. Conclusion

In summary, the Court denies the Bartmanns' motion to dismiss or abstain. A

separate order denying the Motion to Dismiss/Abstain is entered contemporaneously herewith.

The Court recommends that in the event that the Bartmanns have not asserted a claim against the estate in the interim, the district court should grant the Bartmanns' motion to withdraw the reference upon completion of discovery in this proceeding.

The Clerk of the Bankruptcy Court shall transmit a copy of this written recommendation to the Clerk of the United States District Court·for the Northern District of Oklahoma, together with copies of the Motion to Withdraw Reference, Motion to Dismiss/Abstain, and all other pleadings referred to in this memorandum opinion and recommendation, and file a certificate of such transmission in this proceeding.